## Gring *versus* Lerch.

1. Where a man enters into an engagement of marriage with a woman, he has a right to presume that her physical condition is such as to permit sexual intercourse. If it is not such, it is a sufficient defence to an action for a breach of promise of marriage.

2. It is error to instruct the jury that the defect must be such as would entitle the man to a divorce after marriage.

3. Where said physical defect in the woman can be remedied by a surgical operation, and she does not have the operation performed, her neglect so to do absolves the man from his contract of marriage.

4. Where the defence to an action for a breach of promise of marriage is a physical defect in the woman, it is the duty of the court to define what condition of things will avoid the contract; and the duty of the jury to find from all the evidence whether such a condition of things exists.

March 2d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, of *Berks county:* Of January Term, 1886, No. 426.

Capias in trespass on the case *sur* promise of marriage, brought by Clara Lerch against Charles Gring. Pleas, not guilty, non-assumpsit with leave, &c.

The following facts appeared on the trial before SASSA-

[Gring v. Lerch.]

MAN, J.: The defendant did not deny the promise of marriage alleged to have been made November 26th, 1882, but sought to excuse the subsequent refusal to marry upon the ground of physical incapacity upon the part of the plaintiff to allow sexual intercourse. In December, 1882, the defendant testified he ascertained from the plaintiff that there was a physical incapacity, the character of which she described to him, and that she promised to have it remedied, because she alleged she could not perform the duties of a wife without doing so. She failing to have the necessary operations performed he stopped his visits and refused to marry. She denied the infirmity, that she had promised to have an operation performed, and that she had informed the defendant as to any infirmity or defect.

There was evidence that the defect was well known to her. Dr. Ammon testified that he made an examination at her request; that he told her an operation was necessary, and that she could not marry without having this done. Dr. Reeser also testified that she had consulted him, and that after repeated efforts was unable to remove the physical defect, he advised that an operation was necessary, and that she did not have it performed. Both doctors testified substantially that the physical defect consisted of a thickened hymen so situated, abnormal as to position, and of such thickness as to preclude breaking by sexual intercourse; that an operation was necessary, and that the condition of the hymen was such that sexual intercourse after marriage could only be had in so imperfect a way as scarcely to be natural, and that it constituted an impediment to marriage without being operated upon.

Upon the trial no aspersions were cast upon the character of the plaintiff by the defendant.

The plaintiff presented, *inter alia*, the following points:

2. If the jury find that there was a contract of marriage between the plaintiff and the defendant, and that the same was broken in such a manner as to disgrace, mortify, and humiliate the plaintiff, the jury can allow such damage as they see fit to compensate the plaintiff for such disgrace, mortification, and humiliation.

Answer—This point is affirmed. (Eighth assignment of error.)

3. The defendant having testified that he knew in the month of December, 1882, three months before the breach of the contract, of the alleged trouble of the plaintiff, and that he continued during the said three months to visit her, and keep up the engagement, and make preparations for the marriage, fixing a day for the celebration thereof, he is estopped from setting that matter up as a defence, and the verdict should be for the plaintiff.

[Gring *v.* Lerch.]

Answer—The doctrine of estoppel invoked here would be correct if it applies, but its application depends so much on the mutual conduct of these parties to each other, that the jury must determine its applicability from all the facts relating to their conduct with each other. (Fourth assignment of error.)

4. If the jury believe that the defendant seduced the plaintiff while he was engaged to marry her, they may, on that account, give punitive damages, for the purpose of punishing the defendant and compensating the plaintiff for the disgrace and mortification.

Answer—This point is affirmed. (Ninth assignment of error.)

5. If an impediment exists with the plaintiff, in order to afford the defendant an excuse for the breach of his marriage contract, it must be such an impediment as would entitle him to a divorce after marriage, and if capable of being remedied by an operation, it would afford no grounds for divorce after marriage. Therefore, if the jury believe that this impediment is capable of being remedied by an operation, it affords the defendant no excuse for the breach of his marriage contract, and the verdict should be for the plaintiff.

Answer—We say that in the abstract this point is true, yet it may be modified by the degree of the difficulty and the character of the operation required. If the difficulty and the remedy would both be serious, common sense and a sound discretion might make a divorce, appropriate for the relief of such people after marriage on account of the seriousness of the difficulty; in such a case, if it could be ascertained before marriage, a breach of the contract would be excusable. (Third assignment of error.)

In the general charge the court instructed the jury, *inter alia*, as follows:

The girl speaks very little of her physical difficulty—in fact seems to indicate that she knew very little of it, and the doctors that were on the stand that have examined her—you have heard their testimony. The principal men of experience were Dr. Beaver and Dr. Luther. I only speak of them because they were the oldest. The other doctors were learned and entitled to equal credit, and I have only named these two gentlemen because from their experience they would seem to have more knowledge—but you must take all the medical testimony and it is, after all, the evidence upon which this excuse must rest. If you find from the medical testimony in the case that this breach of promise of marriage is excusable, your verdict must be for the defendant. If you find from all the medical testimony in the case that the breach of contract was not ex-

cusable, then that breach of contract would have to be answered in damages, and · your verdict would be for the plaintiff for such damages, and you would have to assess these damages as you should find to be just and proper. I repeat that it is from all the medical testimony of the cause, if you should ascertain that the breach of contract was excusable, then the verdict should be for the defendant. (Fifth assignment of error.)

Verdict for the plaintiff for $1,575 and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia*, the answer of the court to the plaintiff's points, and so much of the charge as is above set out.

*Ruhl* (*Ermentrout* and *Israel C. Becker* with him), for plaintiff in error.—The authorities show that perfect impotence is not necessary to be shown to justify divorce, and the same cause upon this particular question, which would justify divorce, if known before marriage, would excuse breach of promise of marriage. If known before marriage, and party then marries, no divorce can be procured then, because of marrying with this previous knowledge of the cause of complaint. We submit the following authorities: Bishop on Marriage and Divorce, § 231; L. *v.* L. W., Probate Divorce Law Reports 1882, vol. 7, 16; S. *v.* A. S.. Probate Divorce Law Reports, 1877–8, vol. 3, 72; G. *v.* G., Law Reports, 2 Probate and Divorce, 287; H. & P. H., Probate and Divorce Law Reports, 126.

In an action for breach of promise of marriage, seduction cannot be given in evidence in aggravation: Weaver *v.* Bachert, 2 Barr, 80; Paul *v.* Frazier, 3 Mass., 73; Baldy *v.* Stratton, 1 Jones, 316; Hay *v.* Graham, 8 W. & S., 27.

*H. Willis Bland* (*Wm. D. Horning* with him), for defendant in error.—The defendant takes the legal position: That the same cause upon this particular question, which would justify divorce, if known before marriage would excuse breach of promise of marriage. Assuming this legal position to be correct, then the defendant setting up as a defence the malformation of plaintiff's hymen, the burden of proof is on him to show: First, the malformation; and secondly, that it was incurable: Bishop on Marriage and Divorce, § 235, "The defect must also be incurable, and the burden of proof in a suit for divorce on the ground of impotence, is on the plaintiff to establish both that it existed at the time of the marriage and that it is incurable:" Devanbagh *v.* Devanbagh, 5 Paige N. Y. Ch. Rep., 553. M. (falsely called C.) *v.* C., Courts of Probate and Divorce, p. 414, 1869–72, for the nullity of marriage on the ground of impotence on the part of the husband. The Judge

[Gring *v.* Lerch.]

Ordinary says: " The burden of proof in this case lies on the petitioner: U. (falsely called J.) *v.* J., Vol. 1, Courts of Probate and Divorce, p. 460, 1865–69.   See to the same effect, Cuno. *v.* Cuno., Vol. 2 of Scotch and Divorce Appeals, p. 300, 1870–75 ; Newel *v.* Newel, 9 Paige N. Y. Ch. Rep. 25 ; Bishop on Marriage and Divorce, § 231.

Mr. Justice Paxson delivered the opinion of the court April 12th, 1886.
This is a case in which we do not feel disposed to indulge in a prolonged discussion.   Its details are not inviting.   We prefer to state the principles of law applicable to it as concisely as possible.
The plaintiff sought in the court below to recover damages for the breach of a contract of marriage.   The defendant admitted the contract, but defended its breach upon the ground that the plaintiff had a physical impediment which rendered the usual intercourse between the sexes impossible.   The defendant further alleged, and there was evidence to prove, that the plaintiff informed him of her condition, and that she promised him to have the difficulty removed by a surgical operation.   This was not done.
The learned judge below tried the case upon an erroneous theory, which runs like a vein of error all through it.   This can be illustrated by taking his answer to the plaintiff's fifth point, which point and answer are as follows :
"If an impediment exists with the plaintiff, in order to afford the defendant an excuse for the breach of his marriage contract, it must be such an impediment as must entitle him to a divorce after marriage, and if capable of being remedied by an operation it would afford no grounds for divorce after marriage.   Therefore, if the jury believe that this impediment is capable of being remedied by an operation, it affords the defendant no excuse for the breach of his marriage contract, and the verdict should be for the plaintiff."
The answer was as follows :
" We say that in the abstract this point is true, yet it may be modified by the degree of the difficulty and the character of the operation required.   If the difficulty and the remedy would both be serious, common sense and a sound discretion might make a divorce appropriate for the relief of such people after marriage on account of the seriousness of the difficulty ; in such a case, if it could be ascertained before marriage, a breach of the contract would be excusable."
I am not sure that I understand this answer.   It would seem to affirm the point as an abstract proposition and to qualify it as applied to the facts in this case.   The qualifica-

tion, however, is not clear, and could not have given the jury much light. The point should have been refused without qualification. It was error both as an abstract proposition and as bearing upon the case.

When a man enters into an engagement of marriage with a woman he is presumed to have made himself acquainted with her appearance, her temper, her manner, her character, and other matters which are obvious to the understanding, and which can be ascertained in the social intercourse which ususally accompanies courtship. If he changes his mind and refuses to marry her for a defect which is open to observation, and which he might have ascertained before by reasonable care, it is no defence to an action for breach of promise of marriage. While this is so he has a right to presume that her physical condition is such that she is capable of giving him the intercourse between the sexes which is usual in the marriage state. He has a right to presume so because the defect, if it exists at all, is a concealed one, and not open to his observation. To conceal such a thing from him until after marriage would be a fraud. It would be a fraud to sell a cow with such a defect without making it known to the purchaser. In this case, if the defendant is to be believed, the plaintiff informed him of the difficulty, and promised to have it remedied by a surgical operation. This, as before stated, was not done, and we do not think the defendant was in duty bound to marry her, and afterwards call in a surgeon for such purpose. He was entitled to have a wife capable of copulation in the usual way when he married her. We must not lose sight of the fact that we are dealing with a marriage contract pure and simple, and that contract did not require him to take an imperfect woman, and to involve himself in the expense and risk of such an operation. We are of opinion that the plaintiff's failure to perform her promise to have the operation performed absolved the defendant from his contract. If, on the other hand, the defendant is not believed, then the plaintiff is in the position of having a concealed defect, of a nature to at least seriously impair the defendant's satisfaction in any sexual commerce with her, and not informing him of such defect. This, as before stated, would have been a fraud upon him, and would of itself avoid the contract.

It is a mistake to suppose, as was assumed in the point and affirmed by the court, that the impediment must be of such a nature as would be a ground of divorce after marriage. We are not now dealing with a question of divorce. That is a subject that is regulated by statute, and has no necessary relation to the case in hand. We are considering a contract to marry; a contract which calls for the richest good faith on

[Gring *v.* Lerch.]

both sides, and which neither party has the right to enforce against the other, if incapable of performing the full marital duties. A man does not court and marry a woman for the mere pleasure of paying for her board and washing. He expects and is entitled to something in return, and if the woman with whom he contracts be incapable by reason of a natural impediment of giving him the comfort and satisfaction to which as a married man he would be entitled, there is a failure of the moving consideration of such contract, and no court ought to enforce it by giving damages for its breach.

The plaintiff's third point should also have been denied. Instead of doing so, the learned judge left it to the jury with instructions which they may have had some difficulty in understanding. To hold that the conduct of the defendant, referred to in the point, estopped him from setting up his defence, ignores wholly the evidence that the plaintiff promised him to have the impediment removed. He may well have relied upon that promise, and continued to make preparations for the marriage, until he found that she did not intend to keep her promise.

There was plain error in that portion of the charge contained in the fifth assignment. The jury could have drawn no other conclusion from the language of the court than that the cases depended entirely upon the testimony of the doctors, whereas the testimony of the defendant alone, if believed by the jury, was ample to have sustained a verdict in his favor. I prefer not to repeat it, nor is it necessary to do so. And while perhaps not so intended, the charge of the court was well calculated to give the jury the impression that they must take the opinion of the medical witnesses as their guide in forming their conclusion as to whether the breach of contract was excusable. It was for the court to define what condition of things would avoid the contract, and for the jury to find from all the evidence whether such a condition of things existed.

We also sustain the eighth assignment. As applied to the facts of this case the plaintiff's second point should have been refused. The point ignores the fact that the disgrace, mortification and humiliation which the plaintiff suffered, may have been, under our view of the evidence, the result of her own act in contracting an engagement to marry when she was not in a condition physically to perform it.

It was also error to affirm the plaintiff's fourth point. The jury were instructed that if they believed that the defendant seduced the plaintiff while he was engaged to marry her, they might on that account give punitive damages, for the purpose of punishing the defendant and compensating the plaintiff for the disgrace and mortification.

[Ruth *v.* Katterman.]

There was no evidence that the defendant seduced the plaintiff, and, if there had been, the instruction was wrong under the authorities. It is sufficient to refer to Weaver *v.* Bachert, 2 Pa. St. Rep., 80.

There was really no serious dispute as to the facts of this case. There was some difference in the medical testimony, but it differed only in degree. That there was a serious impediment was established by evidence that no jury would have a right to disregard. That the jury found for the plaintiff was doubtless owing to the manner in which the evidence was submitted. The case justified a binding instruction in favor of the defendant.

Judgment reversed.