CASE 17—PETITION ORDINARY—MARCH 26.

## Shackleford v. Hamilton.

APPEAL FROM MASON CIRCUIT COURT.

BREACH OF CONTRACT TO MARRY.—It is implied as a part of every agreement to marry that any subsequent change in the mental or physical condition of either party without fault, so as to render it impossible in the nature of things to accomplish the objects of the marriage relation, will release the parties from the agreement.

Where a man who had contracted syphilis entered into an agreement to marry, believing in good faith that he had been cured of the disease, the reappearance of the disease without fault on his part, so as to render him unfit to marry, released him from his obligation, and constitutes a good defense to an action against him to recover damages for breach of the contract.

COCHRAN & SON FOR APPELLANT.

1. Matrimonial intercourse is the principal end of marriage, and where by reason of supervening disease or impotency this end can not be answered, either party to a contract of marriage may refuse performance without incurring any liability: *provided*, the changed condition was not brought about by his fault. (Bishop on Marriage and Divorce, vol. 1, secs. 321, 322, 778, 779; *Idem.*, vol. 2, sec. 581; Allen v. Baker, 86 N. C., 91; same case, 41 Am. Rep., 444; Minority Opinions in Hall v. Wright, E. B. E., p. 746; same case, 29, L. J. Q. B., 43; Atchson v. Baker, Peake Add. Cas., 103.)

2. If a person agrees to do a certain thing *unconditionally*, he is liable upon his contract for not doing it, though it subsequently becomes impossible for him to do it. (Anson on Contracts, p. 321; Pollock on Contracts, pp. 356, 358.)

Shackleford v. Hamilton.

But there are some contracts, such as the contract of marriage, where there is an implied condition in the contract that its performance should continue possible, and if the contract becomes impossible of performance, no action lies for its breach. (Anson on Contracts, pp. 324, 427, 429, Pollock on Contracts, pp. 349, 350, 361, 362, 367; Bishop on Contracts, secs. 585, 588, 600; Dexter v. Norton, 47 N. Y., 62, 64; Bailey v. De Crepigny, L. R. 4, Q. B., 185; Taylor v. Caldwell, 3 B & S., 826; Robinson v. Davidson, T. R., 6 Exch., 269; Schultz & Co. v. Johnson's Admrs., 5 B. M., 497.)

3. Where the principal part of a contract becomes impossible of performance the parties are also discharged from performing any other part which remains possible, but is useless without that which has become impossible. (Pollock on Contracts, p. 366; Geipel v. Smith, L. R., 7· Q. B., 404, 411; Spalding v. Rosa, 71 N. Y., 40.)

4. The fact that the defendant in this case had no reason to believe at the time of the engagement that he was afflicted, distinguishes this case from the cases relied on by counsel for appellee, in which the right to recover was based upon fraudulent concealment on the part of defendant. (Paddock v. Robinson, 63 Ill., 99; same case, 14 Am. Rep., 112; Naice v. Brown, 39 N. J. L., 133; same case, 23 Am. Rep., 213; Pollock v. Sullivan, 53 Vt., 507; same case, 38 Am. Rep., 702; 2 Am. & Eng. Enc. of Law, p. 525.)

5. There were no circumstances proved in this case that would justify a verdict for exemplary damages. And even if the evidence authorized an instruction as to exemplary damages, the jury should not have been told that the matter was in their discretion, regardless of the question as to whether appellant's conduct had been wanton or reckless. (Austin v. Wilson, 50 Am. Dec., note p. 767; Coryell v. Colbaugh, 1 Am. Dec., 192; Kurtz v. Frank, 40 Am. Rep., 275; 3 Sutherland on Damages, p. 321; Lawson's Rights and Remedies, p. 1294; Johnson v. Travis, 22 N. W. Rep., 624; same case, 33 Minn., 331; Dupont v. McAden, 6 Mont., 226; same case, 9 Poe, 925; 5 Am. & Eng. Enc. of Law, 21.)

WM. LINDSAY, WADSWORTH & SON of counsel on same side.

E. L. WORTHINGTON for appellee.

1. Even if syphilis can be a defense to an action of this sort in any case, the answer is defective in that defendant fails to allege that he *promptly* notified plaintiff on the return of the alleged disabling disease. (Pollock on Contracts, 369.)

The answer is also defective because defendant fails to allege that his disease was, at the time he broke the engagement, *permanent or incurable*, or even then believed by him to be incurable. (Allen v. Baker, 41 Am. Rep., 444.)

2. Impossibility of performance is no defense to an action for damages for

Shackleford v. Hamilton.

a breach of contract. There is no implied term or proviso in an ordi-
nary contract to marry that syphilis, whether contracted before or
after the engagement, should release the syphilitic party from perform-
ing his contract or paying damages for its breach. The law can not
presume that the parties both agree to any such term or proviso. (2
Parsons on Contracts, 673; Hall v. Wright, 96 Eng. C. Law, 745;
School Dist. v. Dauchy, 68 Am. Dec., 371; Steele v. Buck, 14 Am.
Rep., 60; Adams v. Nichols, 31 Am. Dec., 137; Supt. of Schools v·
Bennett, 72 Am. Dec., 373; Harmony v. Bingham, 62 Am. Dec., 142;
Beatty v. Scrivener, 3 Mon., 138; Bohannon v. Lewis, 3 Mon., 270;
Bishop on Contracts, sec. 489; Wild v. Harris, 7 C. B., 999; Millward
v. Littlewood, 5 Exch., 775; Blattmacher v. Saal, 29 Barb., 22; Kelly
v. Riley, 8 Am. Rep., 336; Cooper v. Davenport, 2 Am. Rep., 706; 2
Chitty on Contracts, 795.)

The opinion in Allen v. Baker, 41 Am. Reports, 444, is inconsistent.
and unsound, and should not be followed in Kentucky.

3. The concealment.by appellant, when the engagement was made, that he
had been syphilitic was a fraud upon appellee, and he can not, there-
fore, take advantage of the disease again breaking out to bar appellee's
right of action on the contract. (Wild v. Harris, 7 C. B., 299; 2 Par-
sons on Contracts, 782; Farris v. Lewis, 2 B. M., 375; Prewitt v. Sin-
gleton, 3 J. J. Mar., 707.)

4. The instruction as to exemplary damages was proper. (1 Sedgwick on
Damages, 449; Sauer v. Schulenberg, 3 Am. Rep., 176; Thorn v.
Knapp, 42 N. Y., 474; Southard v. Rexford, 6 Com., 254; Jackson v.
Jenkins, 24 N. Y., 252; 2 Am. & Eng. Enc. of Law, 526; Major v.
Pulliam, 3 Dana, 582; Magee v. Holland, 72 Am. Dec., 344; Raynor
v. Nims, 26 Am. Rep., 493; Campbell v. Arbuckle, 4 N. Y. Sup. Nat.
Rep. System, p. 29; Boone on Code Pleading, sec. 140; Southern Ex.
Co. v. Brown, 19 Am. St. Rep., 306.)

L. W. ROBERTSON, M. C. HUTCHINS, G. S. WALL, EMERY
WHITAKER, ON SAME SIDE.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Lena Hamilton, the plaintiff below and the appellee in
this court, instituted the present action in the Mason
circuit, in which she seeks to recover damages for the
violation of the promise on the part of the appellant to
marry her in pursuance of an agreement to that effect,
entered into in the month of December of the year 1887,
by the terms of which they were to marry in the fall of
1888; that subsequently and by mutual consent, the mar-

riage was postponed until the spring of 1889.   No day
was designated for the consummation of the contract,
but it is alleged that in the month of April, 1889, the
defendant, against the consent of the plaintiff, announced
to her that he would not perform his contract at any time
or place; that the plaintiff was willing and ready to per-
form her contract at any time or place the defendant
might designate, and offered to do so, of which fact the
defendant had notice; that he failed and refused to exe-
cute his contract of marriage with her and still refuses.

On the 19th of April, 1889, the plaintiff had served on
the defendant the following notice:

MR. JAMES SHACKLEFORD—

You are hereby notified that I am ready, able and
willing to perform our contract of marriage and to
become your wife at any time and place you may desig-
nate, and am now ready and propose to fix a time and
place at which our engagement of marriage may be con-
summated.                Very respectfully,

LENA HAMILTON.

An answer was filed by the defendant admitting the
existence of the marriage contract and his failure to con-
summate it, and presents in his answer the following
defense, to which a demurrer was sustained, and the
question here is: Was that defense a bar to the recovery?
as on the demurrer the facts alleged stand admitted.

The defendant says that at the time he made the con-
tract to marry the plaintiff he believed himself to be in
good and sound health, and knew of no impediment to
its consummation; that long prior to any contract of
marriage with the plaintiff he contracted a loathsome
disease, called syphilis, and was treated for it by skilled

physicians until he was pronounced cured and free from the malady; that this was long before he made the acquaintance of the plaintiff. That he consulted two reputable physicians, and one of whom made a thorough examination of his person and advised him there was not the slightest evidence of the existence of the disease, and this was long before he thought of marrying the plaintiff or anyone else; that his regular physician, who had treated his disease, advised him that he was cured and in a fit state to marry, and could safely do so; that after this time, and with the belief in good faith that the malady no longer existed, he made the contract with the plaintiff induced by the love and affection he had for her. He says that, after the engagement to marry, and without any fault on his part, symptoms of the disease again appeared and is now upon him, and he is advised by his physicians that he ought not to marry; that prior to the bringing of this action he made known to the plaintiff the grounds for his refusal, etc.

After sustaining the demurrer to the answer the court below permitted testimony of defendant's condition to go before the jury in mitigation of damages, and the facts alleged in the answer are all sustained by the testimony of skilled physicians who treated him, and that good faith prompted the conduct of the defendant in refusing to marry the plaintiff. He continued to visit the plaintiff regularly with no evidence of any diminished affection until the return of the symptoms of this loathsome disease, that one of the physicians states is in its worst form. When the engagement was broken, he said to the plaintiff that he could make no explanation of his

course, except to say to her, "You would not want to marry a man who would be sure death to you."

After the notice was served on him of the readiness of the appellee to fulfill her engagement, and before the action was instituted, he wrote to the plaintiff as follows: "I engaged in good faith to marry you, and I am surely the party most aggrieved by my inability to do so. The condition of affairs has caused me more suffering than you can possibly, and doubtless more than you have felt, but I am compelled, as an honorable man, to save you from that fate that would await you as my wife. You can but respect me the more when you know all. I can not tell you more, but I had a talk with your lawyer, Mr. Hutchins, and I refer you to him. I believed myself able to marry you, but recent developments have convinced me of my mistake and it would be a crime were I to do so. Think of me and my misfortunes as kindly as you can," etc.        Respectfully,

                              JAMES SHACKLEFORD.

We can well see how such a letter might be penned with a view of escaping responsibility in the way of damages instead of being prompted by an honest conviction of right on the part of the defendant; but when his physicians testify as to facts, all of which are uncontradicted, that leave no doubt as to his good faith and of his belief that he was permanently cured long prior to his engagement with the plaintiff, the sole question arises as to the sufficiency of the answer; and we have alluded to the facts, only because they stand uncontradicted and were offered in mitigation.

The court below, entertaining the opinion that as the defendant had entered into this marriage contract he is

bound for its breach, although it might have been the duty of the appellant, under the circumstances, to decline to execute it, sustained the demurrer to the defense; that the contract was unconditional, and the defendant being able at the time the promise was made to perform the contract, he must either execute it or become responsible in damages for the breach. If such a contract as that of marriage is to be treated in the light of a mere bargain and exchange of chattels between parties competent to contract, then it seems to us there would be but little difficulty in sustaining the action of the court below; but if the agreement when entered into is to be treated as creating a status that forms the basis of our entire social system, and in which society has more interest in preserving its purity than the parties to the agreement, it must follow that the defense interposed to the appellee's claim for damages was, in law as well as morals, sufficient to prevent the recovery. When the marriage contract is consummated, the parties taking each other for better, for worse, for richer, for poorer, and agree to cherish each other in sickness and in health, the fact that the social standing of the one party or the other, or their pecuniary condition, was not as represented, will afford no ground for relief; still, when there is a mere agreement to marry, there may be such a condition of the one party or the other as to health or other bodily infirmity arising subsequent to the agreement as would authorize either party to decline to enter into the marriage relation, and to hold otherwise would be to place such a contract upon the same footing with cases of mere personal chattels.

It is said by Mr. Bishop in his work on Marriage and

Divorce that, " one after marriage can not complain of an impediment known to him before; but if he were ignorant of the existence of the defect, or of its incurable nature, though in himself, he may take advantage of it by suit of nullity.  The marriage was a mistake; the ends intended by it can not be answered." (2 Bishop, Mar. & Div., 6th Ed., 582.)

The text-books establish the doctrine that, " without sexual intercourse the ends of marriage, the pro-creation of children and the pleasures and enjoyments of matrimony, can not be attained."  The first cause and reason of matrimony, says Ayliffe, " ought to be the design of having offspring; so the second ought to be the avoiding of fornication.  And the law recognizes these two as its principal ends, namely: a lawful indulgence of the passions to prevent licentiousness, and the pro-creation of children, according to the evident design of Divine Providence."   (1 Bishop, Mar. & Div., 6th Ed., 322.)

It is not pretended, nor has it been so adjudged in any court, that a mere temporary disease, or such a change in the physical condition of a party to a marriage contract after it has been entered into and without his fault, as would render him less capable of discharging duties growing out of the marital relation, would be sufficient to justify its breach; but when the party is afflicted with bodily disease to such an extent as is dangerous to the lives of those with whom he comes in contact, and such as must, if he should marry, necessarily be communicated to his wife by sexual intercourse and through her to affect their offspring with the poison, connected with the fact that he was ignorant of the disease being upon him

at the time he contracts to marry, he will be excused for the non-performance of his undertaking.

While the contract to marry is silent as to any condition, it must be implied that any subsequent change in the physical or mental condition of either party, without fault, so as to render it impossible in the nature of things to accomplish the objects of the marriage relation, will release the parties from the agreement. Impotency, insanity, or such a diseased condition of the body as would affect the offspring and endanger the life of the mother if the contract were carried out, would certainly be within this rule. Any other doctrine would require the same construction to be given the agreement to marry that is given to contracts for the sale and delivery of personal property, where the party can recover damages for the breach, although it is impossible to perform it; in other words, it is urged that the woman must have either the husband or damages in his stead if he is able to have the marriage ceremony performed.

This is also the objection to the majority opinions rendered in the Court of Queen's Bench in the case of Hall v. Wright, reported in 96 E. C. L., 745. We concur with the minority opinions in that case that the contract of marriage is subject to implied conditions peculiar to itself. In that case the defense was that, after the promise and before the breach, the defendant was afflicted with bleeding from the lungs, and by reason of the disease became incapable of marriage without great danger to his life, and, therefore, unfit for the married state, of which the plaintiff had notice. After reviewing the authorities upon the question, Erle, Justice, said: "The principle deduced from the cases seems to be, that a contract to marry is assumed in

law to be made for the purpose of mutual comfort, and is avoided if by the act of God or the opposite party the circumstances are so changed as to make intense misery instead of mutual comfort the probable result of performing the contract." The majority opinion was rendered on the idea that the disease was not such a state of health as to make it impossible for the defendant to marry, and, therefore, not impossible of performance; and if a case like the one being considered had been presented, we doubt if any difference of opinion would have been expressed.

Pollock, and other text-writers on contracts, in alluding to this opinion say, that it is so much against the tendency of the later cases that it is now of little or no authority beyond the point decided; but if that opinion had been *unanimous*, although entitled to great weight, we would not be inclined to follow its reasoning or concur in the conclusion reached.

The only American case we have found on the question is reported in 86 N. C., 91 (Allen v. Baker), the opinion delivered by Ruffin, Justice. In that case the defendant refused to comply with his contract because he was afflicted with a disease similar to the one this defendant had. The disease was contracted before the contract was entered into, but the defendant had been advised, and in fact believed, that it could be cured in time to enable him to fulfill his engagement. Acting in good faith, and from a conscientious conviction that his disease was incurable, he refused to comply with his agreement, and the court in that case said: "We can not understand how one can be liable for not fulfilling a contract when the very performance of it

would in itself amount to a great crime, not only against the individual, but against society itself."

The present case is much stronger for the defense than the case cited. In the one case the defendant knew the disease was upon him when he made the contract, but was advised that he would be well in time to consummate it; while in this case the defendant believed he was well at the date of the contract, and had been so advised by his physicians long before the contract was entered into. While it is not necessary that this court should sanction the ruling of the court upon the facts in Allen v. Baker, to adjudge that it was the duty of the defendant to marry the plaintiff under the circumstances and avail himself of his conjugal rights that must necessarily communicate this loathsome disease to his wife and to their offspring, or to inflict upon him punishment by way of damages for not executing the contract, would, as said in Allen v. Baker, be compelling him to do that which is against all law, human and divine.

It is impossible for the defendant to fulfill his contract. His disease renders him incapable of marriage without actual damage to the life of the woman he marries by communicating to her and through her to their offspring a loathsome disease that is now, from the testimony in the case, gradually destroying this unfortunate man. He was guilty of a moral wrong in contracting the disease, but at that time was under no obligation to the appellee; and it may well be asked, what obligation now rests upon him? If he had complied with his agreement and executed the contract by an actual marriage with the plaintiff on a designated day as required by her notice, would

he not have inflicted upon the plaintiff an injury that no amount of damages could have repaired?

The appellant, in his interview with the appellee, made manifest to her that her life would be made miserable if the contract was carried out. He then gave to her counsel the real facts as to his condition and referred the plaintiff to him. That the plaintiff had notice of his condition before suit was brought is manifest. His obligation to the plaintiff by reason of the agreement with her was to abandon at once all idea of carrying it into execution. No greater crime in law or morals could have been committed by the appellant than a performance of his agreement. The purity of our social system, the interest of the public in preserving sacred the marital relation, the protection of those whose existence may spring from such an unholy alliance, as well as the future welfare and happiness of the parties themselves, require that such a construction should be given this class of contracts; and if there was no precedent for the recognition of the doctrine announced we would not hesitate to make one.

In our opinion the answer and the amendment presented a valid defense. The demurrer, therefore, should have been overruled.

The judgment is reversed, and cause remanded with directions to award a new trial and for proceedings consistent with this opinion.