DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 9894. Department Two. March 28, 1912.]

IDA M. TRAVIS, *Respondent*, v. ANDREW R. SCHNEBLY, *Appellant*.[1]

BREACH OF MARRIAGE PROMISE—DEFENSES—ILL HEALTH—INSTRUCTIONS. In an action for breach of marriage promise, in which there was evidence tending to show that the plaintiff was in good health when the promise was made but became too ill to marry, and that the marriage had been postponed from time to time for three years on account of plaintiff's ill health, and finally abandoned for that reason, the defendant is entitled to have the jury instructed to the effect that, if the plaintiff became too ill to enter into the marriage relation, and the defendant had waited a reasonable time and she had not recovered, the defendant would have a right to withdraw from the engagement; ill health on the part of a woman healthy when the promise was made being a good defense to the action.

Appeal from a judgment of the superior court for Garfield county, Canfield, J., entered February 10, 1911, upon the verdict of a jury rendered in favor of the plaintiff, in an action for a breach of promise. Reversed.

*J. L. Sharpstein* and *E. V. Kuykendall*, for appellant.
*Cain & Hurspool* and *John C. Applewhite*, for respondent.

CROW, J.—Action by Ida M. Travis against Andrew R. Schnebly, to recover damages for an alleged breach of prom-

[1]Reported in 122 Pac. 316.

ise to marry. From a judgment in her favor, the defendant has appealed.

Respondent alleged that in October, 1904, she and appellant promised to marry each other within a reasonable time; that she has been ready and willing to marry appellant; that in December, 1907, she made preparations for their marriage; that, at appellant's request, postponements were made until the spring of 1908, and the fall of 1908, but that he failed and refused to marry her, though requested so to do. Appellant admitted the original agreement, but denied other allegations of the complaint. For his first affirmative defense, he alleged that subsequently they mutually agreed that each of them should be released from the promise, that appellant might be at liberty to marry any other person, and that, in reliance upon that agreement, he married his present wife. For a second affirmative defense he alleged:

"That subsequently to the time when plaintiff and defendant became engaged to marry each other, the plaintiff became afflicted or was discovered to be afflicted with a certain ailment or disease or weakened physical condition commonly known and described as a floating kidney, the tendency of which is to render a woman so afflicted therewith nervous, irritable, and weak and to greatly increase the danger above the danger ordinarily incurred by entering into the marriage relation and becoming a mother, and that defendant is naturally of a nervous temperament and condition and that because of the said condition of plaintiff an operation was performed upon plaintiff which operation did not cure her, and she continued in ill-health thereafter, and because of the lack of physical ability and strength on the part of the plaintiff accruing and developing subsequently to the engagement of plaintiff and defendant, the marriage of plaintiff and defendant was from time to time postponed; and that, because thereof, the defendant in good faith requested the plaintiff to be released therefrom, and that defendant understood and was led to believe by the plaintiff that she agreed thereto; and that, because of all of the aforesaid things, the defendant, acting in good faith, ceased his attentions to the plain-

tiff and subsequently entered into the marriage relation with his present wife."

To this defense, respondent replied as follows:

"Replying to the matters and things set forth in defendant's second, further, and separate answer and defense herein, plaintiff admits that subsequent to her engagement with defendant, she was afflicted with a certain ailment commonly known as a floating kidney, and alleges that long prior to the breaking of said engagement by defendant she was operated upon for said ailment, and wholly and permanently cured, and plaintiff denies all the other allegations in said second further answer and defense contained."

On the trial it was conceded that the original promise was made in October, 1904; that respondent was then in good health; that subsequently she was afflicted as alleged, and that she was operated upon in the city of Spokane during the year 1905, and was treated for some time thereafter. Respondent introduced evidence tending to show a complete recovery; while evidence introduced by appellant tended to sustain his contentions that she had never recovered, and that she was unfit to enter the marriage relation. Appellant in substance testified that he and respondent became engaged in October, 1904; that her health was then good; that she became ill in the spring of 1905; that he learned of her illness in February or March; that she went to Spokane for an operation and treatment; that he next saw her in September, 1905; that she was then in bad health, being confined to her bed a portion of the time; that later in the fall she was suffering from nervous prostration, and stated that she had consulted a physician who said she would have to undergo another operation; that appellant saw her five or six times during the winter of 1905 and 1906; that he next saw her in the fall of 1906; that she was then sick; that he did not see her from the fall of 1906 until the spring of 1907, at which time she was apparently better and thought she would get well; that he then told her they might as well get mar-

ried; that she said the next fall would suit her, but that no date was then fixed; that in the fall he suggested they get married early in March, 1908; that in March, 1908, her health was not good; that he next saw her in June, 1908; that she then said her health was such they had better call the engagement off; that he said he would wait until fall; that he did so; that he talked with her in September, 1908, at which time she said she would rather he would wait until spring; that he said he would do the best he could; that he did wait until spring; that he saw her in February, 1909; that they again discussed her health, which was no better; that she thought they should wait until fall; that he then said he had waited as long as he could, and that they had better call the engagement off. Appellant thereafter married his present wife, and this suit was commenced.

This evidence, if true, shows that respondent's ill health, incurred after the engagement, was the sole cause of numerous delays, covering a period of more than three years. Appellant's contentions on this appeal are all predicated upon instructions given and refused. We only find it necessary to consider his assignment that the trial judge erred in refusing his requested instruction number nine, which reads as follows:

"If after plaintiff and defendant became engaged, the plaintiff became too ill to enter into the marriage relation, the defendant would not be required to wait an unreasonable length of time for her to recover, and if you find from the evidence that she was thus ill, and the defendant waited as long as was reasonable under all the circumstances for her to recover, and she had not recovered, then he had a perfect right to withdraw from the engagement, and your verdict should be for the defendant."

This instruction should have been given. Its refusal constituted reversible error. When the parties first entered into their mutual agreement to marry, plaintiff, as far as known, was a strong and healthy woman, free from any physical ailments or diseases. Shortly thereafter, without fault of either

of the parties, she became ill and was compelled to submit to a surgical operation, and for a long period of time continue under medical treatment. Appellant contracted to marry a healthy woman and not an invalid. When it became manifest that by reason of poor health she could not marry, postponements were made awaiting her recovery. This constituted a modification of the original contract and imposed upon appellant the duty to wait a reasonable time for her recovery. The agreement still contemplated that appellant was to marry a healthy woman. He at no time agreed to marry an invalid, although he did agree to wait a reasonable time. Ill health of one party, contracted without his or her fault, after the original promise to marry is a defense available to the other party in an action for breach of promise. A man who has only agreed to marry a healthy woman should not be compelled to accept her as his wife should she become an invalid before marriage. In *Gring v. Lerch*, 112 Pa. St. 244, 3 Atl. 841, 56 Am. Rep. 314, the court said:

"A man does not court and marry a woman for the mere pleasure of paying for her board and washing. He expects and is entitled to something in return, and if the woman with whom he contracts be incapable by reason of a natural impediment of giving him the comfort and satisfaction to which as a married man he would be entitled, there is a failure of the moving consideration of such contract, and no court ought to enforce it by giving damages for its breach."

Appellant contended that respondent's long-continued illness unfitted her for the marriage relation; that she had become a confirmed invalid; that she never recovered her health; and that he should not be held in damages. He also introduced evidence which, although disputed, if accepted as true, was sufficient to sustain these contentions. It was for the jury to determine whether respondent's health was in fact restored, and whether appellant had waited a reasonable time for her recovery. This is not an action in which a defendant is pleading his own illness as a defense; but one

in which, according to his contention, he is called upon to marry an invalid who was a healthy woman when the original contract was made. Under such a state of facts, if proven to the satisfaction of the jury, a defendant should not be held liable for damages. This case in its facts differs materially from that of *Grover v. Zook*, 44 Wash. 489, 87 Pac. 638, 120 Am. St. 1012. We have made an exhaustive examination of the authorities, but find no similar case. Here we have a plaintiff who, according to appellant's contention, was well and hearty when he agreed to marry her, but who had the misfortune to incur a serious and perhaps permanent illness which impaired her physical vigor and unfitted her for becoming a helpmeet to her husband. Yet she insists that he should either marry her or respond in damages. No court should impose any such obligation upon him. Respondent has been unfortunate, but that is not appellant's fault. It must be presumed that he would not have entered into the agreement could he have foreseen the unfortunate condition into which she has fallen relative to her health. To award damages for his refusal to thereafter marry her would be to make for him a contract which he himself neither made nor intended to make. If her illness had existed prior to his promise and he had been aware of the same, a different question would be presented; but it did not then exist. Appellant was entitled to have his evidence submitted to the jury with the instruction requested.

The judgment is reversed, and the cause is remanded for a new trial.

DUNBAR, C. J., CHADWICK, MORRIS, and ELLIS, JJ., concur.