SHEPLER *v.* CHAMBERLAIN.

1. BREACH OF MARRIAGE PROMISE—EVIDENCE—SUFFICIENCY—QUESTION FOR JURY.

In an action for breach of promise of marriage, evidence *held*, sufficient to take to the jury the questions of the mutual promise to marry and the breach thereof by defendant.

2. SAME — WHETHER AFFLICTION WITH CANCER WILL EXCUSE BREACH A PUBLIC QUESTION.

Whether defendant should be excused for breaching the contract of marriage by reason of the fact that, since the engagement was entered into, he has become afflicted with cancer, *held*, to be a question of public policy, and, therefore, where pleaded, should be considered by the appellate court, notwithstanding defendant's testimony that his refusal to marry plaintiff was not based on said ground. CLARK, C. J., and BIRD and WIEST, JJ., dissenting.

3. SAME—AFFLICTION WITH CANCER NO EXCUSE FOR BREACHING MARRIAGE CONTRACT.

Evidence tending to show that, although defendant is afflicted with a cancer on his lower lip, it is now curable, that it is not a communicable disease, and that it is not hereditary, *held*, insufficient to excuse his breaching the

On question of ill health as defense to action for breach of promise to marry, see notes in 15 L. R. A. 531; 7 L. R. A. (N. S.) 582; 40 L. R. A. (N. S.) 585; L. R. A. 1916D, 1276.

On excessiveness of damages for breach of promise to marry, see note in 41 L. R. A. (N. S.) 853.

marriage contract in the absence of testimony that his physical condition, due to the cancer, will in any way be aggravated or affected by the marital relation, or that his death would be hastened by consummation of the marriage.

4. SAME—MAY BE CONSIDERED IN MITIGATION OF DAMAGES.

Evidence that defendant was afflicted with cancer, *held*, to justify an instruction that the jury might consider defendant's physical condition upon the question of postponement of the marriage, and in mitigation of damages.

5. SAME—DAMAGES—EXCESSIVE VERDICT.

A verdict for plaintiff for $4,000, *held*, under the evidence, not excessive.

Error to Ingham; Carr (Leland W.), J.    Submitted October 4, 1923.    (Docket No. 32.)    Decided March 5, 1924.

Assumpsit by Bessie Shepler against George W. Chamberlain for breach of promise of marriage. Judgment for plaintiff.    Defendant brings error. Affirmed.

*Frank L. Dodge* and *L. B. Gardner*, for appellant.

*A. M. Cummins*, for appellee.

FELLOWS, J.    Plaintiff had verdict and judgment in the sum of $4,000 in this action brought by her for breach of promise of marriage.    If the testimony offered by plaintiff including her own is to be believed, and the jury believed it, the engagement was entered into in the fall of 1916, and continued until the fall of 1922, when it was breached by defendant.    Agreements to marry are not usually entered into under circumstances similar to those of commercial contracts, nor are their breaches usually so circumstanced.    We shall not discuss the evidence in detail and will content ourselves with saying that there was sufficient evidence given in behalf of plaintiff to take to the jury the

226—Mich.—8.

question of the mutual promise to marry—of the agreement—and the breach thereof by defendant. At the trial there was no motion made by defendant for a directed verdict for failure of proof as to either of these branches of the case. We may also say that we find no reversible error in the rulings of the trial judge in receiving and rejecting testimony.

This brings us directly to the important and interesting question in the case. Particularly important because the public is one of the parties to the marriage contract itself and the question involved is one of public policy. Some time after the engagement which the jury found established, defendant became afflicted with a cancer on his lower lip. He consulted his physician at that time and his physician advised treatment which he did not follow. All of the medical evidence in the record was introduced by defendant. It tends to establish that defendant now is afflicted with a cancer; it tends to establish that it is now curable and was readily curable when first discovered; it tends to establish that the pus discharged from it is infectious as is other pus, but it negatives the claim that cancer is a communicable disease; the tendency of the medical testimony is that it is not a hereditary disease and there is no testimony that defendant's physical condition due to the cancer will in any way be aggravated or affected by the marital relations or that his death would be hastened by consummation of the marriage.

The right of a defendant to breach a contract to marry on the ground of his own health has not been fully considered by this court. The right of a defendant to show the physical condition of the plaintiff in an action of this kind is established by *Goddard* v. *Westcott*, 82 Mich. 180, but that case involved the right of one of the contracting parties to insist that the other party to such a contract should bring to the marriage a good state of health, in other words

that the husband is entitled to a healthy woman for a wife rather than an invalid.     Some language used in the case of *Simmons* v. *Simmons,* 8 Mich. 318, might have some application here if we did not have in mind the question of public policy.     At the time that case was written cousins were not inhibited from marrying and it was held that proof of the frequent intermarriage of the ancestors of the parties who were cousins resulting in unfortunate issue was not admissible, the breach not having been placed on that ground, and it was said:

"A change of health, or any other essential change in condition, may be in some cases a complete bar to an action of this kind; and so may the recent discovery of facts be a bar, or a cause for mitigation of damages, if the party acts upon it in good faith in receding from his contract.     But a ground such as is here taken, is of no weight whatever, when it is not shown to have been the real and honest cause of the breach of engagement."

In the instant case by the pleadings the defense is raised, and although defendant in his testimony denies any agreement to marry was entered into, we do not think the defense should be ignored as insisted by plaintiff's counsel.     The question involved concerns the public as well as the parties and is properly before us for consideration.

In considering this question we should begin with the case of *Hall* v. *Wright,* 96 Eng. C. L. 746 (120 Eng. Rep. 688).     In this case the defense was placed on the ground that after the promise defendant became afflicted with a disease resulting in hemorrhage of the lungs, rendering him incapable of marriage without great danger to his life.     In the court of Queen's Bench (746) the judges were evenly divided. Crompton being the junior judge withdrew his opinion and the judgment went for the defendant.     In the Exchequer Chamber on appeal (765) the case was

reversed by a vote of four to three, each of their Lordships, as is common, expressing his views in a separate opinion. This case has received much adverse criticism in this country by courts and textwriters, and Pollock, the eminent English writer, in his work on contracts (Pollock on Contracts [8th Ed.], 449) reviews the case and concludes:

"The decision itself can be reviewed only by a court of ultimate appeal; but it is so much against the tendency of the later cases that it is now of little or no authority beyond the point actually decided."

Reference is made in several of the opinions in the *Hall Case* to the case of *Atchinson* v. *Baker*, 2 Peake's N. P. 103, where it was said by Lord Kenyon:

"If the condition of the parties was changed after the time of making the contract, it was a good cause for either party to break off the connection. Lord Mansfield had held that if, after a man had made a contract of marriage, the woman's character turned out to be different from what he had reason to think it was, he might refuse to marry her without being liable to an action, and whether the infirmity was bodily or mental, the reason was the same; it would be most mischievous to compel parties to marry who could never live happily together."

But this was manifestly *dictum* as the case was disposed of on a question of pleadings.

We have noted the fact that *Hall* v. *Wright, supra,* has been criticized by some of the courts of this country. It has, however, been approved by the court of appeals of New Jersey. *Smith* v. *Compton,* 67 N. J. Law, 548 (52 Atl. 386, 58 L. R. A. 480). But in following it the court was led to the adoption, as we view it, of an extreme doctrine and it was there held (we quote from the syllabus):

"Nothing will excuse the defendant for the breach of promise of marriage except such a disease or complication of diseases as renders the making of the

marriage contract and the consummation of the marriage by marital intercourse impossible."

We think this doctrine ought not to be followed. It places agreements to marry on the basis of commercial dealings and loses sight of the fact that the public is interested and that healthy offspring of every marriage is not only in furtherance of the marital relations but of benefit to the State.

In the case of *Shackleford* v. *Hamilton,* 93 Ky. 80 (19 S. W. 5, 15 L. R. A. 531, 40 Am. St. Rep. 166), the defendant had at one time been afflicted with syphilis. He was advised by his physician that he was cured and in fit condition to marry. Believing such advice and in good faith he became engaged to plaintiff. Thereafter and without fault on his part the disease again developed and he declined to carry out the agreement to marry. His defense was sustained and it was said by the court:

"It is not pretended, nor has it been so adjudged in any court, that a mere temporary disease, or such a change in the physical condition of a party to a marriage contract after it has been entered into and without his fault, as would render him less capable of discharging his duties growing out of the marital relation, would be sufficient to justify its breach; but when the party is afflicted with bodily disease to such an extent as is dangerous to the lives of those with whom he comes in contact, and such as must, if he should marry, necessarily be communicated to his wife by sexual intercourse and through her to affect their offspring with the poison, connected with the fact that he was ignorant of the disease being upon him at the time he contracts to marry, he will be excused for the nonperformance of his undertaking."

A similar Kentucky case is *Gardner* v. *Arnett,* 50 S. W. 840, where it was said by the court:

"If the syphilis developed after he had made the contract of marriage, his right to refuse to carry it out existed. He owed it to the plaintiff and society to refuse to enter into marriage relations with her,

and he had the right to abandon the contract and re-fuse to marry her at any time before their marriage was solemnized."

So in *Allen* v. *Baker*, 86 N. C. 91 (41 Am. Rep. 444), defendant was advised by his physician that he was suffering from a loathsome venereal disease which was incurable. He at once notified plaintiff's parents. It was claimed that he was convinced of the correctness of the advice of his physician and it was said by the court:

"In his answer he alleged that his failure to comply really depended upon such a conviction on his part, and if such be true, this court could not hold that he was responsible in damages by reason thereof. We cannot understand how one can be liable for not fulfilling a contract, when the very performance thereof would in itself amount to a great crime, not only against the individual, but against society itself."

Both Kentucky and North Carolina courts repudiate the doctrine of *Hall* v. *Wright, supra.*

*Sanders* v. *Coleman*, 97 Va. 690 (34 S. E. 621, 47 L. R. A. 581), was an action for breach of promise. The defense was that after the engagement defendant became afflicted with a disease of the urinary organs which would be aggravated by sustaining marital relations. While we think the case correctly decided, it is doubtful if we could go as far in laying down a general rule as did the Virginia court. It was there said:

"We hold, therefore, that a contract to marry is coupled with the implied condition that both of the parties shall remain in the enjoyment of life and health, and if the condition of the parties has so changed that the marriage state would endanger the life or health of either, a breach of the contract is excusable."

The disease might be of only a temporary character which would readily yield to treatment. This might

justify request for the postponement of the marriage until defendant might be cured but would not justify the breach of the agreement. This is pointed out in *Trammell* v. *Vaughan*, 158 Mo. 214 (59 S. W. 79, 51 L. R. A. 854, 81 Am. St. Rep. 302), where defendant was afflicted with a venereal disease of a temporary character, and it was there said:

"If the disease is of a temporary character, such as was the case here, and could be easily cured, the defendant is entitled to postpone, the marriage until he is cured, and if the disease is of a permanent character, such as was the fact in the North Carolina, Kentucky and Virginia cases cited, the defendant·is not only entitled to refuse to carry out the contract, but it is his duty to do so."

These cases with the exception of the Virginia case hold that where defendant without his fault after the engagement develops an incurable, communicable disease which affects his ability to perform his marital duty or which renders marital relations impossible without communicating the disease to his spouse or their offspring, such fact operates as a justification of the breach of the agreement to marry.

*Travis* v. *Schnebly*, 68 Wash. 1 (122 Pac. 316, 40 L. R. A. [N. S.] 585, Ann. Cas. 1913E, 914), is similar to our case of *Goddard* v. *Westcott, supra,* and somewhat similar is *Gring* v. *Lerch*, 112 Pa. St. 244 (3 Atl. 841, 56 Am. Rep. 314), where it is tersely stated:

"A man does not court and marry a woman for the mere pleasure of paying for her board and washing. He expects and is entitled to something in return, and if the woman with whom he contracts be incapable by reason of a natural impediment of giving him the comfort and satisfaction to which as a married man he would be entitled, there is a failure of the moving consideration of such contract, and no court ought to enforce it by giving damages for its breach."

In *Grover* v. *Zook*, 44 Wash. 489 (87 Pac. 638, 7 L. R. A. [N. S.] 582, 12 Ann. Cas. 192, 120 Am. St.

Rep. 1012), the plaintiff was afflicted with pulmonary tuberculosis and defendant had a hereditary taint of such disease.  It was held that such facts justified the breach of the agreement even though both parties were aware of the facts before the engagement. We do not cite this case with approval of all that the opinion contains but it is authority to the point that the question of public policy is involved in cases of this character.

The supreme court of Iowa in the case of *In re Oldfield's Estate,* 175 Iowa, 118 (156 N. W. 977, L. R. A. 1916D, 1260, Ann. Cas. 1917D, 1067), in both the prevailing opinion written by Justice Gaynor and the dissenting opinion written by Justice Salinger, fully considers and discusses the authorities upon the subject.   We commend that case to those who would pursue the subject beyond the present opinion.   In the majority opinion, after considering the authorities, it is said:

"We take from these authorities, based, as we think, on sound reasoning:
"*First,* that one may repudiate an agreement to marry, when, subsequently to the making of the contract, he becomes afflicted with a loathsome disease, which, upon the consummation of the marriage, may be communicated to the spouse and to the offspring born of said marriage.
"*Second,* When, after the making of the contract to marry, he becomes afflicted with a fatal and incurable malady, and the consummation of the marriage would hasten his death, he is not bound to perform by consummating the marriage, and therefore is not liable in damages for such failure.   Or, in other words, that there is implied in every contract to marry that the parties will not endanger life or health in the consummation of the marriage; and that, where illness or disease comes upon one after making the contract to marry, such as would render marriage dangerous to his life, a breach of the contract, based on such unavoidable and such unanticipated condition, is ex-

cusable. We do not mean by this that the danger should be simply problematical, or a possible contingency—one that may or may not be a resultant consequence of the act of consummating the marriage —but one which the evidence renders reasonably certain is the inevitable consequence of such an act. Where the malady is of such a fatal character that he cannot enter into the marriage relation and receive any of the benefits which grow out of and are involved in the relationship established by the consummation of the marriage, he is excused.

"*Third*, that, where one is stricken, before the time arrives for the consummation of the marriage, with a fatal malady, and has but a few days or weeks or months to live, and the evidence makes this reasonably certain, he is excused from the consummation of the marriage, and, being excused, his estate, upon his death, is not liable in damages for such failure."

A consideration of the authorities is satisfying to us that the rule announced by the Iowa court is the rule sustained by reason and the weight of authority. Applying it to the facts of the instant case the defendant was not excused in the breach of the agreement by his physical condition. The trial judge correctly charged the jury that they might consider defendant's physical condition upon the question of postponement of the marriage (see *Trammell* v. *Vaughan, supra*) and in mitigation of damages (*Mabin* v. *Webster*, 129 Ind. 430 [28 N. E. 863, 28 Am. St. Rep. 199]).

Error is assigned on certain excerpts of the charge, and also upon the refusal to grant certain preferred requests. The charge as a whole was fair and fully protected the rights of the defendant and upon the whole correctly stated the law applicable to the facts.

Upon the argument we were impressed that the verdict was excessive. It is possible that this tentative impression was due to the fact that the verdict was larger than we would have given had we been the triers of the facts. But a careful reading of this

record is convincing that we can not reduce this verdict without transcending our power as an appellate tribunal. There was in the case no appeals to passion or prejudice, nor is the verdict such a one as in and of itself bears upon its face evidence of passion or prejudice, or a disregard of the evidence, when we consider the record before us. It is not such a verdict as shocks one's sense of justice. While the record is convincing that the parties were matter of fact sort of people without such great affection as is seen depicted on the modern screen, the fact remains under the finding of the jury that for six years plaintiff was bound to defendant by her agreement to marry him, and that these were years when women may usually expect to make their successful matrimonial alliances. The parties are estimable people; both stand high in their community. Defendant owns 240 acres of good land worth approximately $20,000, incumbered with an indebtedness of $8,000. He had probably $5,000 of personal property. He sold from the farm between the time this action was brought and the time of the trial $3,500 worth of stock and produce. His explanation of the manner of disposal of this sum is not entirely satisfactory. During the sickness of both his father and mother, plaintiff went to their home where defendant resided and upon two occasions of four months each assisted in their care and performed the household duties without pay. Defendant had the assistance of able counsel, and unless we substitute our judgment for that of the jury, which has the approval of the trial judge, this verdict must stand. Recognizing our power and our duty as determined in numerous decisions we must decline to disturb the verdict.

The judgment will be affirmed.

MCDONALD, SHARPE, MOORE, and STEERE, JJ., concurred with FELLOWS, J.

Bird, J. Defendant amended his plea before trial by giving notice that:

"Please to take notice: That under the general issue above pleaded, the defendant will give in evidence and insist in his defense that about four years ago, this defendant became, without any fault on his part, afflicted with an infectious and communicable disease, viz.: A cancerous growth on the inner side of his lower lip, which he has been unable to cure; that at times said cancerous growth gives forth a poisonous, infectious and communicable discharge, well calculated to infect the glands of his throat, intestines and other vital organs of his body which will ultimately, if not arrested, cause his death; that the discharge is well calculated to endanger the life and health of any individual that he might come in contact with.

"That said plaintiff knew of this cancerous condition shortly after defendant became afflicted therewith; that it has been a matter of deep concern to the defendant and has been talked of between them regarding his condition."

Upon the trial proof was given as to the character of the cancer on defendant's lip, and expert witnesses who had examined it testified that the discharge was infectious, that the tendency was to increase in area, and extend to other organs of the body, and while they could not say that cancer was hereditary they did say and gave examples where it had run in families for several generations.

At the close of the proofs the court was requested by defendant's counsel to charge the jury, as follows:

"That if you are satisfied by a preponderance of the evidence that these parties were engaged to be married and that defendant thereafter became afflicted with a cancerous growth on the inner side of the lower lip and that he is still suffering from such malady and that the disease is a malignant, dangerous and infectious one; that it is liable to spread to the glands of his throat, intestines and the other organs of his body then defendant would be justified in refusing to

marry the plaintiff, and she cannot recover in this case."

It will be observed that in the notice under the plea defendant's malady is disclosed. It did not, however, allege that defendant refused to marry plaintiff because of this malady.

Defendant was asked upon cross-examination:

"*Mr. Cummins:* Do you now claim that the reason you did not marry Bessie Shepler was because of this trouble on your lip?

"*A.* I do not."

Had defendant's pleading alleged that he refrained from marrying plaintiff because of his malady and supported it by his own or other testimony we think the trial court would have been in error in refusing to give the foregoing request. Considering the condition of the proofs the request was properly denied. In view of the fact that the pleading made no such claim and defendant denied that he made such a claim, I am unable to see how the legal question discussed by Mr. Justice FELLOWS is involved in this controversy. Unless defendant himself made the defense of incapacity by reason of his malady, the jury could not be asked to so find. The testimony bearing on the existence and condition of the cancer was material only for the purposes indicated by the trial court.

Excepting that part of the opinion of Mr. Justice FELLOWS bearing on the question of whether defendant's malady was a defense to the action, I concur in the result reached by him.

CLARK, C. J., and WIEST, J., concurred with BIRD, J.