## Mary Beans v. Robert J. Denny, Appellant.

**Security for costs:** FILING OF PROOFS: WITHDRAWAL OF MOTION. A defendant in moving that plaintiff be required to give security for costs must present all his proofs with the motion, and he cannot withdraw his motion and refile it with the same and additional affidavits, at least without showing good cause; and when so withdrawn and refiled without leave of court. it was not an abuse of discretion to strike it from the files.

**Evidence:** REPUTED WEALTH. A witness who has known a defendant in a breach of promise suit for a long term of years, and resided in the same county practically all of the time, is qualified to testify to his reputed wealth in that county, where it is shown that defendant was well known.

**Same.** One may testify to the reputed wealth of a person in a community in which he has lived long enough to establish a reputation in that respect, although his residence there was temporary; but if the witness discloses a lack of knowledge on subsequent cross examination the remedy is a motion to strike.

**Evidence of value.** The price paid for land several years previous and upon which valuable improvements have since been made is not competent in determining its present value.

**Breach of marriage promise:** EVIDENCE: ISSUES. Where the evidence in a breach of promise suit was conflicting as to whether plaintiff was afflicted with a veneral disease prior to the time fixed for marriage, and whether the same was curable, an issue as to plaintiff's good health at the time of the alleged breach was presented.

**Same:** INSTRUCTION. Where there was no evidence that plaintiff was suffering from a venereal disease at the time of the engagement, as claimed by defendant, or that he had knowledge thereof at that time, an instruction requiring a finding of want of such knowledge at the time of the engagement as a condition precedent to a verdict for him, while superfluous, was not prejudicial.

**Same:** JUSTIFICATION. A person is excusable for declining to carry out his promise of marriage with one afflicted with an incurable venereal disease, unless made with knowledge of the disease.

**Same:** PLEADINGS: ISSUES: INSTRUCTIONS. A defendant cannot complain of the courts instructions regarding his plea in bar of a suit for breach of marriage promise, where the interpretation placed upon the pleading by defendant as disclosed in his requested instructions is adopted by the court.

**Same:** EVIDENCE. In a breach of promise action the conduct of the parties toward each other during the engagement period may be shown in determining the existence of the contract, and this includes sexual intimacy.

**Same:** CORROBORATION. In breach of promise cases corroboration of plaintiff's evidence of sexual intercourse with defendant is not required.

**Evidence:** CROSS-EXAMINATION. The cross-examination of plaintiff in a breach of promise suit with respect to a subject not developed in the direct examination, and relating to a matter of defense which must be pleaded to be available, should not be allowed.

**Same:** ILLICIT INTERCOURSE: EVIDENCE. Where the parties to a breach of promise suit were the only witnesses on the question of their sexual intimacy, affirmed by plaintiff and denied by defendant, an instruction that mere opportunity would not warrant a finding that it occurred, nor be sufficient as corroborative evidence if the parties were equally creditable, but might be considered with other evidence on that subject, was correct.

**Same:** DAMAGES: INSTRUCTION. Where the court in one paragraph of the charge expressly told the jury not to allow damages for illicit intercourse, a further instruction that in measuring the damages for breach of the marriage promise, the intimacy of the parties and defendant's conduct toward plaintiff might be considered, did not authorize a finding of damage on that ground.

**Submission of issues.** Where the court told the jury to consider the intimacy of the parties and all injuries sustained by plaintiff including loss of affection, etc., failure to especially refer to defendant's plea in mitigation of damages that she had become ill-

tempered and expressed a dislike for defendant and his children was not reversible error, especially as no request was made therefor.

**Misconduct in argument.** In the absence of objection thereto error cannot be assigned on the use of improper language in argument to the jury.

**Trial:** ABSENCE OF JUDGE. Where there is no showing that a presiding judge was absent from the court room during the trial his presence will be presumed.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

MONDAY, OCTOBER 26, 1908.

REHEARING DENIED TUESDAY, JANUARY 26, 1909.

THE defendant appeals from a judgment for damages resulting from an alleged breach of promise to marry.—*Affirmed.*

*Seerley & Clark* and *Blake & Wilson,* for appellant.

*Poor & Poor, J. E. Maley,* and *Charles Willner,* for appellee.

LADD, C. J.—The plaintiff, who was born in 1864, began work as housekeeper for defendant, sixteen years her senior, in 1900. His wife, who was then an invalid, died in 1901. There were three children, one away at school, and the others, aged sixteen and fourteen, at home. Plaintiff continued in his employment as housekeeper, with some intermissions, until June, 1906, and in September following this action for damages because of his alleged breach of promise to marry her was begun. Such promise is said to have been made in June, 1903, to be consummated after his daughter had finished school in 1905, and performance

then postponed until the spring of 1906. All this was denied by defendant, who pleaded, by way of mitigation, that the plaintiff had become ill tempered and had asserted hatred for him and his children, and, in bar, "that plaintiff was not and is not now in a physical condition by reason of disease to fulfill the duties of wife and mother, and that she should not marry, and defendant pleads said condition of plaintiff as a bar to this suit."

I. Previous to the answers defendant moved for security of costs on the ground that plaintiff was a nonresident of the State, supporting the same by his affidavit.

A counter affidavit of plaintiff was then filed. Six days later defendant filed six additional affidavits in support of the motion. On motion of plaintiff, these were stricken

1. SECURITY FOR COSTS: filing of proofs: withdrawal of motion.

from the files. Thereupon defendant withdrew his motion, and two days later filed another for security of costs with affidavits of like import, and by the same parties who had made those stricken. Upon motion of plaintiff, the second application for security of costs was stricken from the files; and this ruling is complained of. In withdrawing the first motion no right to file another was reserved or granted, and the last was filed without leave of court. The withdrawal of the one and filing of another manifestly was to avoid the effect of the statute exacting that all affidavits accompany such a motion. Section 3847 of the Code, as amended by chapter 100, Acts 27th General Assembly, provides: "That the application for such security shall be by motion, filed with the case, and the facts supporting it must be shown by affidavits annexed thereto, which may be responded thereto by counter affidavits on or before the hearing of the motion and each party shall file all his affidavits at once, and none thereafter." In other words, the party moving for security for costs must present all his proof at the time of filing the motion, and none thereafter. To permit a party who has not so pre-

sented his affidavits to withdraw the motion, and refile it, accompanied with those at first omitted, would defeat the very design the lawmakers must have had in inserting this condition; that is, the prompt disposition of the application on the record as first made by the parties, and the avoidance of delay by an extended controversy over a collateral matter not in any way involving the merits of the case. Possibly the court for good cause might permit the withdrawal of such a motion and the filing of another; but, if so, the evasion of the effect of this statute and a previous ruling would not be good cause. There was no abuse of the discretion necessarily exercised by the district court in matters of this kind.

II. As tending to prove defendant's pecuniary condition, McIntire, a brother-in-law of plaintiff, residing at Middleton, a village fourteen miles from Burlington, was allowed, over objection, to testify to defendant's wealth as reputed in Des Moines County. The witness had been acquainted with him for forty-six years, during all but four years of which time he had resided in that county. His cross-examination, as well as that of the defendant, indicated that the latter was well known in that and other portions of the county, and, though he had resided temporarily at Galesburg, Ill., for four years, his home was at Burlington, where he had lived a long time previous, and that he owned and supervised several farms in Des Moines and Louisa Counties. Under the circumstances disclosed, it was not error to receive this testimony.

*2. EVIDENCE: reputed wealth.*

III. One Brooks testified that defendant had said to him that he was owner of one thousand acres of land valued at $100 per acre, that he knew his reputation as to wealth in Galesburg, Ill., and that he was reputed to be worth $100,000. Exception was taken to the admission of this evidence on the ground that defendant was but a temporary resident of that city

*3. SAME.*

for the purpose of educating his children, with his home in Burlington. It was enough if he had lived there long enough to establish a reputation in the respect testified to, and that the witness knew what it was. If want of knowledge appeared on cross-examination after the ruling of the court, the remedy was by motion to strike the evidence, as the ruling was correct when made. There was no error.

IV. Defendant offered in evidence a deed of one hundred and sixty acres of land executed to him in March, 1901, by Holden, and another of forty acres executed to him February 5th of the same year by Prindle. On objection, the portions of the instruments stating the considerations were excluded, and defendant was not allowed to testify what he had paid for the land. The ruling was correct. Six years had elapsed since the purchase, and in the meantime he had improved the land by tiling it and by the erection of buildings thereon. That the price for which land was recently sold may be shown as tending to establish its value is too well established to call for citation of authority; but, when the sale is somewhat remote and valuable improvements have been made since, it goes almost without saying that the price paid would not furnish any aid in determining or estimating the present value. The ruling has our approval.

*4. EVIDENCE OF VALUE.*

V. The plaintiff was treated at a hospital in March, 1904. On the trial several physicians, upon hypothetical questions embracing the hospital record and treatment, and facts as to her physical condition which some evidence tended to show, expressed the opinion that she was then afflicted with syphilis, and was being treated for that disease. On the other hand, it appeared that, on application of defendant, three physicians were designated by the court to examine her, and, after doing so, they reported their inability to discover any traces of this disease. Other evidence was convincing that she had not been afflicted therewith. The record was such,

*5. BREACH OF MARRIAGE PROMISE: evidence: issues.*

however, as to raise an issue as to whether she was then suffering therefrom, and, as there was a difference of opinion as to whether the disease is curable, and the time required to effect a cure, if possible, an issue as to whether she was in good health at the time of the alleged breach also was raised.

The court instructed the jury that "if at the time when the defendant refused to carry out the said alleged contract of marriage on his part the plaintiff was still

6. SAME: physically affected by a venereal disease,
instruction. which rendered her unfit for the marriage state, and you further so find that the defendant was ignorant of such physical condition of the plaintiff at the time when he entered into the said alleged contract of marriage with her, you should then find that the defendant was justified in refusing to marry the plaintiff. But, if you fail to find from a preponderance of evidence that the plaintiff was afflicted with an ailment of the character charged by the defendant during the said period of the said alleged engagement of marriage between the said parties, and that said condition was unknown to the defendant at the time when he entered into said engagement, or if you believe from the evidence that the plaintiff was during a part of the said time affected with such a disease, but became entirely and permanently cured of the same before the defendant refused to comply with the terms of the said marriage contract on his part, you should then find that the defendant was not justified in refusing to marry the plaintiff on account of her physical condition."

This instruction is criticised (1) for exacting a finding of want of knowledge at the time of the alleged engagement, (2) in that a finding that the disease rendered plaintiff unfit for marriage is made essential, and (3) in that the jury are told that even though plaintiff was afflicted with the disease in 1904, if she was cured by the time fixed for the marriage, this would not excuse defend-

ant from fulfilling his promise. As there was no evidence that plaintiff was afflicted with the disease in June, 1903, or bearing on defendant's knowledge thereof, the portion of the instruction first criticised was superfluous, but could not have been prejudicial to appellant; nor was there any conflict in the evidence as to this disease rendering a person unfit for matrimony.

The court might well have omitted the qualifying clause, and directed the jury that a person is always excusable for declining to carry out his promise of marriage 7. SAME: to one afflicted with syphilis, unless made justification. with knowledge of this condition. As the evidence was conclusive, no prejudice could have resulted from adding the qualifying clause. See, as bearing on this subject, *Trammell v. Vaughan,* 158 Mo. 214 (59 S. W. 79, 51 L. R. A. 854, 81 Am. St. Rep. 302); *Allen v. Baker,* 86 N. C. 91 (41 Am. Rep. 444); *Shackleford v. Hamilton,* 93 Ky. 80 (19 S. W. 5, 15 L. R. A. 531, 40 Am. St. Rep. 166); *Grover v. Zook,* 44 Wash. 489 (87 Pac. 638, 7 L. R. A. (N. S.) 582, 120 Am. St. Rep. 1012); *Gring v. Lerch,* 112 Pa. 244 (3 Atl. 841, 56 Am. Rep. 314); *Goddard v. Wescott,* 82 Mich. 180 (46 N. W. 242). See *Vierling v. Binder,* 113 Iowa, 337. Most of the cases deal with a situation in which disease is pleaded as an excuse or justification for nonperformance of the contract by one party when demanded by the other. But in *Grover v. Zook,* 44 Wash. 489 (87 Pac. 638, 7 L. R. A. (N. S.) 582, 120 Am. St. Rep. 1012), the defendant was relieved of his promise to marry an incurable consumptive on the ground of public policy; and it is held in several jurisdictions that the fact that a spouse is afflicted with syphilis when married which is incurable, or of which there is but a remote probability of effecting a cure, is good cause for annulling a marriage on the ground of fraud. These rulings are in harmony with the instruction of the court that, in event plaintiff was not cured, defendant was

under no obligation to perform; but the evidence is in conflict as to whether permanent recovery from the disease in its secondary stage ever can be effected. The physicians agree that it may be controlled, but some of them insist that it is a constitutional disorder which is likely to be transmitted to offspring, and may break out again on the person afflicted, even after the lapse of fifty years. There can be no doubt but that the curability of the disease is matter of grave doubt in the medical profession; and were we confronted with the proposition as to whether one who has become afflicted therewith may complain of a breach of a previous promise of marriage at least when made in ignorance of the malady, we should hesitate long before so holding. The point, however, is not saved in this record.

True, the third division of the answer pleaded on knowledge and belief that the plaintiff "was not, and is not now, in physical condition, by reason of disease, to fulfill the duties of wife or mother, and that she should not marry, and defendant pleads said condition of plaintiff as a bar to this suit." The times alluded to are not indicated, save when the answer was filed and some previous date. Did the pleader intend that the latter was at the time of the alleged breach? Or was this purposely left indefinite? In any event, appellant is not in a situation to complain if the court accepted his own interpretation of the answer. This appears in the first and third instructions requested. The former reads: "In case the defendant pleads as a bar that the plaintiff at the time of the alleged breach and up to the time of the bringing of this suit was suffering from syphilis or some venereal disease which unfitted her from being a wife or mother. If said defendant has by a preponderance of the evidence shown that plaintiff was in 1904 suffering from syphilis or some venereal disease, and that she was still suffering from said disease at the time of the alleged breach of contract, then I instruct you

8. SAME: pleadings: issues: instructions.

that the plaintiff can not recover in this case." Again, in the third paragraph, the court was requested to instruct the jury, in substance, that, if plaintiff was afflicted as alleged in 1904, she must be found to have continued in that condition in 1906, for that the evidence showed the disease to be incurable. No evidence tending to prove her to have been unchaste with any other than defendant, was introduced, and so, after thus interpreting the pleadings, appellant ought not to be heard to complain because the court adopted such interpretation in the instruction given.

VI. The plaintiff testified that, shortly after the engagement in 1903, she was induced by reason thereof to indulge defendant in sexual intercourse, and that this was continued until the spring of 1905. The court instructed the jury that, as this had not been pleaded in aggravation of damages, it could not be considered for that purpose, but was a circumstance, if found to be true, "tending to show a matrimonial engagement between them," and should be given "such weight as you believe it fairly entitled to, in connection with other facts and circumstances proven in the case with reference to the existence of said alleged agreement of marriage." It is conceded that the rule as stated finds express approval in *McConahey v. Griffey,* 82 Iowa, 564, which was cited with apparent approval in *Herriman v. Layman,* 118 Iowa, 590, but cases to the contrary from other States are relied on, with insistence that the above decisions are erroneous, and should be overruled. See *Wrynn v. Downey,* 27 R. I. 454 (63 Atl. 401, 4 L. R. A. (N. S.) 615, 114 Am. St. Rep. 63); *Felger v. Etzell,* 75 Ind. 418. It is a universal rule that in actions of this kind the conduct of the parties towards each other during the alleged engagement may be shown in evidence as an aid to the jury in determining whether such engagement in fact existed, and sexual intimacy would seem to be so

9. SAME: evidence.

closely related to the marital relation as that indulgence in sexual intercourse would be a circumstance to be considered in connection with others. As observed in McConahey v. Griffey, women are more likely to surrender their chastity under the influence of a promise of marriage than otherwise, and the rule therein announced no more than recognizes such established fact and allows such weight to be given thereto as the jury in the circumstances of the case believe it entitled to. This does not involve the thought that such misconduct is an ordinary or usual incident of betrothal. It is no more than a full application of the rule that mutual conduct of the parties during the period of alleged betrothal may be fully proven, and that, if this includes sexual intercourse, it is more likely than otherwise to be attributable to the alleged engagement, and therefore to be considered as a circumstance bearing upon the question as to whether there has ever been a promise to marry. It must be conceded that the weight to be accorded this circumstance is not very considerable, and, were the point res integra, the writer would doubt the propriety of the rule. As it has long stood, and has support in other jurisdictions, however, we are not inclined to disturb it.

VII. The defendant moved to exclude the testimony of plaintiff concerning sexual intercourse because she was uncorroborated. The motion was rightly overruled. Corroboration is only required in the prosecution for seduction as a crime, and not in a civil action for damages. See Welch v. Jugenheimer, 56 Iowa, 11.

10. SAME: corroboration.

It also appears that plaintiff testified on cross-examination that she had no sores on her body, except a boil on her shoulder and another on her wrist, when she went to the hospital in March, 1904. She was then asked if she was afflicted with any other malady, and also whether the physician in

11. EVIDENCE: cross-examination.

attendance informed her with what malady she was afflicted. The objection as not cross-examination was sustained, and rightly so. The subject had not been broached in the direct examination, and as it related to a matter of defense necessarily to be pleaded to be available, the ruling was correct. *Vierling v. Binder,* 113 Iowa, 337. If *Goddard v. Westcott,* 82 Mich. 180 (46 N. W. 243), announces a different doctrine, it does not have our approval.

VIII.   Several instructions are criticised and among them the thirteenth. It told the jury, in substance, that mere opportunity to have sexual intercourse would not warrant a finding that it occurred, nor would it be enough as corroborative evidence to establish the same if the parties were

12. SAME: illicit intercourse: evidence.

equally credible as witnesses, but that it might be considered, in connnection with all the other evidence, in determining whether the parties had indulged in illicit intercourse. We see no objection to this instruction. The parties were the only witnesses on this subject, the plaintiff affirming and the defendant denying, and, if they were equally credible, the effect of the instruction was to say that proof of opportunity would not warrant a finding that there was such intercourse. As applied to the facts of the case, this was correct. Even though proof of opportunity is not corroborative evidence tending to connect defendant with the commission of the offense, under the statute, it is proper to be considered in connection with other evidence in determining whether there was indulgence such as she testified to. Manifestly without opportunity this could not happen.

Again, it is said that the fifth instruction permits the jury to consider self-serving declarations. If this be conceded, there was no evidence of such declarations introduced.

The eleventh instruction allowed the jury to consider in measuring the damages the intimacy of the parties and

defendant's conduct toward plaintiff, and it is said that this permitted the consideration of the illicit intercourse. Possibly this might have been so had not the court expressly directed the jurors in another instruction not to allow any damages because of that relation. The instructions are to be read together, and, when this is done, the criticism mentioned is fully met.

13. Same: damages: instruction.

IX. The defendant pleaded that the plaintiff had become ill tempered and at one time had declared that she hated defendant and his children as mitigating circumstances. The court in instructing the jury did not specifically refer to this plea, but did advise the jury to take into consideration the degree of intimacy existing between the parties, and all injuries sustained by plaintiff, including loss of blighted affections and disappointment, hopes, and the like. If the plaintiff said what she is contended to have said, her affections could not have been as great as otherwise, and would be less likely to be injured or blighted by the breach. While the attention of the jury might well have been directed to this special plea, yet it was of a nature such as could scarcely have been overlooked, and, in the absence of a request, we are not inclined to hold that it was error to omit a more specific reference thereto.

14. Submission of issues.

X. Some other rulings are complained of, but they are not of such a character as to require discussion. It is urged that counsel for the plaintiff used inflammatory language in his argument to the jury; while appellee insists there was warrant for what he is alleged to have said in the argument of counsel for the defendant. We do not determine the merits of this controversy, for no objection whatever appears to have been made, and, in the absence of any objection to the language employed, error can not be assigned. *Gorham v. Sioux City Stockyards Co.*, 118 Iowa, 749.

15. Misconduct in argument.

Counsel for appellant suggest that the judge was out of the room, but no showing was made to that effect, in the absence of which we are bound to presume his continued presence throughout the trial. *State v. Carnagy*, 106 Iowa, 483. Moreover, it is doubtful whether the evidence of alleged misconduct is properly preserved. *Kinney v. McFaul*, 122 Iowa, 452. A majority of the members of the court are of the opinion that the damages allowed are not excessive.

16. TRIAL: absence of judge.

The judgment is *affirmed*.