Everett Connelly, Appellee, v. Ed Nolte, Appellant.

No. 46768.

JANUARY 8, 1946.

Paul W. Steward, of Des Moines, and R. L. Saley, of Hampton, for appellant.

James E. Coonley, of Hampton, for appellee.

BLISS, C. J.— The collision between the 1941 Ford Tudor owned and operated by plaintiff, a farmer fifty-one years old, and the gravel truck operated by defendant, occurred about 9:00 o'clock in the forenoon of July 26, 1943, on a country highway about a mile north of the town of Geneva. At this place an east-and-west graveled highway intersects, but does not cross, a similar highway extending north and south. The highways were not graded but each had received a coating of gravel. The traveled roadway of each was about twenty feet wide and the fences along each were four rods apart. There was considerable traffic over the two roads at this intersection, since the city of Hampton was to the north and Geneva was a short distance south. The east-and-west road entered the other by a Y, which had two well-defined and well-traveled arms, one of which curved northwest and

merged into the north-and-south road for the northbound traffic and the other arm curved to the southwest into the same highway for the southbound traffic. The traveled roadway of each arm was about thirty feet wide. The two arms and the traveled roadway of the north-and-south road, into which they merged, left a triangular piece of the highway between them which was very little used by traffic on either road. Each side of the triangle was about fifteen feet. The west part of the triangle was level, but the east portion, partly because of the natural contour of the ground and partly, perhaps, by dirt and gravel deposited by road-maintenance machinery, was elevated a foot or more. Grass grew over the whole triangle. Vehicles passing to or from either road used the arms of the Y. Directly to the southeast of the intersection and abutting on the highways was a cemetery, the ground of which was somewhat higher than the surface of the road to the south of the intersection and obscured the view of traffic on each highway to travelers approaching the intersection from the east and south until they were about to enter the intersection. There was a slight upward grade to the intersection from both the south and east.

Just before the collision plaintiff had been driving at a speed of about thirty-five miles per hour west toward the intersection and slowed to a speed of ten or fifteen miles an hour as he entered the left arm leading to the south. He testified that he kept well to the right side of the arm so that a vehicle entering the same arm from the south going east would have had ample room to pass him. As he headed southwest for the right-hand or west lane of the north-and-south road, and when he was about in the center of that road, he saw the defendant's truck approaching from the south at a speed of fifty miles per hour, clear over on the west side of that roadway. He testified that he thought the truck would pull over to the east side and he continued to the southwest as he had been traveling until he saw that defendant was continuing straight north, with speed unabated, on the west side of the road. Plaintiff then drove onto the grass shoulder on the west side of the north-and-south road but the truck struck his car on the left side at about the steering wheel and

knocked it a considerable distance north and west, almost to the west fence. He testified that the collision was but a few feet south of the north fence line of the cemetery had it been extended west.

Defendant's version of the collision was much different. He testified that he was traveling north on the east half of the road at a speed of thirty miles per hour and collided with the plaintiff's car, which had cut the corner and was traveling south on the east half of the road and failed to yield one half of the way on meeting the truck.

The court submitted five grounds of negligence alleged in plaintiff's petition, namely (1) failure of defendant to keep proper lookout (2) failure to have his vehicle under proper control (3) excessive speed (4) failure to yield plaintiff the right of way (5) failure to allow plaintiff one half of the traveled way. Damages were asked in the sum of $15,357.11.

Defendant answered admitting the collision and denying all other allegations. His motion for a directed verdict at the close of all the evidence was denied. It was stipulated that the damage to plaintiff's car was $407. Plaintiff's medical expense was $50. The jury returned a verdict of $3,857.11 for plaintiff. The allowance for plaintiff's personal injuries was apparently $3,400. Defendant filed a motion for new trial containing twenty-six grounds, fourteen of which were based upon alleged misconduct of plaintiff's attorney. The motion was overruled and judgment was entered for plaintiff in the amount of the verdict.

Appellant relies upon eleven errors for reversal, seven of which are based upon misconduct of appellee's attorney.

I. It is the theory of appellant that the intersection was not a Y-intersection in fact, but was the ordinary T or rectangular intersection formed by the traveled roadways of each highway, and that the case should have been so submitted. He also contended that the court erred in submitting the case to the jury as a right-of-way intersection case instead of a meeting-and-passing case.

It is unnecessary to detail the conflicting testimony introduced by each party. It is our conclusion that the jury

was warranted in finding that the preponderance of the testimony supported and sustained the contention of the appellee and that the collision took place substantially in the manner and at the place as testified by him. Appellant requested instructions in support of his contentions and excepted to the court's refusal to give them and excepted to those given in their stead. The court followed our holding in Swope v. Todd, 231 Iowa 352, 1 N. W. 2d 200, and instructed that appellee was not negligent in using the left arm of the Y, as he did, in entering the north-and-south highway. We think the court rightly instructed the jury in these matters and find no merit in the errors assigned on these points.

II. Appellant charges appellee's counsel with misconduct in his "diligent, repeated and thinly veiled suggestion and inference that defendant was protected by liability insurance and the trial court erred in overruling and denying defendant's motion for mistrial based upon such misconduct."

The examination of the jurors before twelve were accepted was not taken down by the court reporter. Appellee's attorney laid his files on the attorneys' table and stepped over to the jury box and began, or was about to begin, to examine a juror, when he returned to the table and began searching through his file as though looking for something. Apparently not finding it, he leaned over the table and asked, in a whisper, Mr. Steward, of opposing counsel, the name of appellant's insurance carrier. Mr. Steward replied, in a voice audible over the courtroom, in which members of the jury panel not yet called and those who had been called were sitting, that "there was no insurance company in this case, that this was a case against Ed Nolte." That was the end of the conversation. Mr. Coonley, appellee's attorney, then resumed the search of the papers in his file and found the slip of paper on which he had written the name of appellant's insurance carrier. He then examined the members of the jury and asked a number of them if they carried insurance in that company. He, of course, did not inform the jurors that the company he inquired about was the appellant's insurance carrier. Appellant made no objection to this examination and took no exception to Mr. Coonley's part in the incident

just related. The jury to try the case was selected and the appellee took the stand as his first witness. After he had testified at some length about matters connected with the collision, his attorney asked him: "Did you carry any insurance to protect you for your loss here?" Before objection to the question could be completed, the witness answered: "No, sir." The court then sustained the objection to the question and also sustained appellant's motion to strike the answer. The witness then related that after he had received first aid at the hospital in Hampton on the day he was injured, his two boys, Alan and Ray, took him home, but they stopped at the scene of the collision. This examination of the witness then took place:

"Q. And were any measurements made by anybody at that time or distances stepped off? A. Yes, sir, we stepped them off. Q. Now who was there doing that at that time? A. Well, Alan and I and Ray and— Mr. Steward: We object to the naming of the people there as wholly irrelevant and immaterial. The Court: Overruled. The defendant excepts. Q. Who else was there at that time? A. Frank Dirst. Q. Is that the Frank Dirst who has the office across the street? A. Yes, sir."

At the close of the direct examination of the appellee Mr. Steward suggested to the court that he wished to take up a matter in the absence of the jury. Since appellee's attorney did not wish to make concessions as fully as desired by Mr. Steward, Mr. Saley, one of appellant's attorneys, was sworn and examined. The result of this examination showed that the Frank Dirst mentioned in appellee's examination was an agent for insurance companies, including those engaged in automobile and casualty insurance, and was secretary for the Farmers Mutual Insurance Company and had an office across the street from the west or main entrance to the courthouse and had a sign on his office window advertising the fact that he was in the insurance business. Mr. Coonley then took the witness stand in his own behalf and was cross-examined by Mr. Steward. He testified that he had no intention of trying to make the jury believe that Dirst had sold the insurance on appellant's truck; that neither he nor his client had mentioned insurance; that he was simply

showing what the appellee did at the scene of the accident in the way of observations and measurements, and who was present. Mr. Coonley also testified that both he and the attorneys for the appellant knew that the Northwestern Casualty Insurance Company of Milwaukee, Wisconsin, was the insurance carrier in the case, and had sold a policy of insurance covering county trucks, specifically naming the appellant, Ed Nolte, as insured; that this insurance had been sold through a local agent, Arnold Snater; that at no time, including the whispering incident in the courtroom, had he, intentionally or otherwise, suggested that there was insurance in the case or that Dirst had sold insurance to the appellant nor had he mentioned insurance except in examining the jurors. He admitted that when he asked the appellee if the Frank Dirst who was taking measurements was the Frank Dirst who had the office across the street he knew of no other Frank Dirst. On cross-examination he admitted that he knew the name of the insurance company when he came into the courtroom, having obtained it from W. C. Gatts, a representative of the company from Webster county, and had written it on about a three-by-three-inch memoranda slip, but not being sure of the exact name he had gone to his file to refresh his memory, and, not at once finding the slip, had then inquired in a whisper to Mr. Steward, not audible to anyone else, for the name. He admitted that he had talked to Dirst about the measurements he took and learned that Dirst had sent them to his company, the Allied Mutual, and he asked to see them when they were returned to Dirst. Although he had no such information from Dirst, Mr. Coonley said it was his understanding that the Allied Mutual carried the P. L. and P. D. (public liability and property damage) on the appellee's car but that Dirst did not sell the insurance. He said that the appellee's sons and Dirst were stepping off measurements at the same time, and that he had not subpoenaed Dirst; that he did not know what his measurements would disclose. At the close of this examination, Mr. Steward moved:

"Upon the record made the defendant moves to strike from the record the testimony of the plaintiff to the effect that a man named Frank Dirst was at the scene of the accident, and the further testimony to the effect he maintains an office, or has an

office just across the street. And further moves the court to discharge the jury and grant a mistrial and continue the case over the term upon the obvious grounds and for the reasons that the questions propounded and the answers elicited were wholly incompetent, irrelevant and immaterial and not propounded in good faith or for any purpose of developing any fact or facts material or relevant to the controversy here in question, but were obviously for the sole purpose of calling the jurors' attention to the fact that a prominent insurance man, who maintains his office just across the street from the court house, with advertising in front of it, where it could meet the jurors' eyes, had some interest in this accident, for the obvious purpose of inferring to the jury that the defendant here was insured."

It was but natural that defendant's attorney should have been hypersensitive to the insurance allergen, and that he also was impressed that others, including the jurors, had the same reaction. Some evidence that he may have been mistaken appears from the impression of the able trial judge, experienced in the trial of like cases, as expressed in his order overruling the motion. He said:

"I will say, gentlemen, I am caught by surprise. I hadn't even myself formed any impression of anything, of what transpired, I sat here in complete ignorance of any offense having been committed, at least what transpired in the record, and I don't believe there has been any violation within the recent decisions, at least, of the Supreme Court, so, I will overrule it at this time. And, if the defendant elects, I will make an admonitory instruction to disregard any allusions to insurance in the submission of the case, if it be submitted, but I don't think even that any situation has developed, except on the specific request by the defendant, where I should even mention any such phase of the case.

"That was the impression I had. I don't believe there has been any offense committed that would warrant the granting of the motion. Call the jury."

At the close of all of the evidence, appellant renewed his motion for mistrial, thus:

"Mr. Steward: Comes now the defendant at the close

of all of the evidence and renews his motion made during the trial for a mistrial, and asks that the Court declare a mistrial and discharge the jury and continue the cause over the term for all of the reasons, and upon all of the grounds, stated in the motion at the time it was made, and he adds thereto the following:

"That the plaintiff's counsel has failed to produce the said Frank Dirst as a witness, has failed to show that any measurements were taken by him, and has wholly failed to make any good faith effort, or any effort whatever to connect up the testimony with respect to the presence of said Frank Dirst at the scene of the accident, and it now appears conclusively that the sole and only purpose of the testimony was to create an inference that the defendant is protected by insurance."

The motion was overruled.

The same objections were alleged in appellant's motion for new trial, which included other complaints; charges of misconduct in the closing argument of Mr. Coonley. The court reviewed the specific grounds of the motion at some length in its order overruling it. Speaking of the whispering episode, the court said:

"The first incident complained of was in connection with the examination of the jurors. No record of this was kept, but it all occurred in the presence of the court. It is the recollection of the court, that no juror had been asked anything touching his connection with any insurance company, when Mr. Coonley returned to his side of the table, examined his files, and then leaned across the table and whispered something to Mr. Steward, which the court could not hear. Whereupon, Mr. Steward announced, so all could hear that there was no insurance in the case. The court can well understand that it might be prejudicial to ask such a question of a juror immediately following a hesitation and whispering to opposing counsel. Had counsel consulted the court before the announcement, this court would have done all in its power to break what semblance of connection which the circumstances might have given, either by adjournment or even forbidding the inquiries. But the question of course presents itself, as to whether defendant can complain

when his counsel chose to handle the situation himself. This situation is further weakened by the fact that no objection was made at the time, but counsel proceeded with the examination of the jurors with respect to that item. No objection was made as to any over extension of the use of that hazardous privilege.''

Of the Dirst incident, the court said:

''The next incident was that precipitated by a question addressed I believe to the plaintiff, which brought the answer, that he saw Frank Dirst taking measurements at the scene of the accident. This was on the occasion of his return to the scene a few hours after the accident. This was followed by a question, the answer to which, identified him as one who had an office across the street. In the course of this episode the word 'insurance' was not mentioned. The gist of defendant's complaint rests in the showing made in the absence of the jury, by Mr. Saley, that Mr. Dirst was Secretary of the local Mutual Fire Insurance Company, and also wrote casualty insurance, and that his office was on the west side of the court house square and was marked by a 'Neon' sign.

''One can scarcely question the propriety of identifying one who was present at the scene of an accident taking measurements, especially if he was going to use him. Mr. Coonley said, Mr. Dirst was sending for the measurements, but at the time the question was asked they had not been returned. He was not called by either party. This apparently led to the second claimed offense, to-wit, when Mr. Coonley, in his argument, chided the defendant for not calling Mr. Dirst. Apparently, Mr. Coonley was confronted with the implication which might arise from his failure to produce Mr. Dirst and was seeking to parry the inference. No exception was taken. To the mind of the court this was more in the nature of poor argument than misbehavior. Taking this incident as a whole, it seems to be wanting in the element of design or similar implications.''

The appellant had requested the giving of instruction No. 9½ which was, in substance, that questions asked jurors respecting their connection with any insurance company should

not be considered by them as any intimation that any insurance company was involved in the case, and calling their attention to the fact that this was a case between Connelly and Nolte, and no one else.

In its ruling on the insurance phase, the court said:

"As bearing on this entire insurance issue, I think but fair to say, that the court hesitated to give Instruction 9½ and told defendant's counsel that it would be given only on their request after reconsideration. It was the opinion of the court then and still is under review of this record that aside from the examination of the jurors, the case was remarkably free of embarrassing situations growing out of allusions to insurance. * * * For the foregoing reasons it seems that the misconduct in so far as it involves illegal injection of the insurance issue cannot be sustained."

III. Appellant assigns error because of alleged misconduct of appellee's attorney in going outside the record and misquoting the record in the closing argument. He complains of this statement:

"I don't know, it seems to me when they say fifteen thousand dollars is a lot of money, there seems to be plenty of money floating around in this particular case. Two lawyers here. One from Des Moines. Three doctors hired here. Going clear over to Cherokee to get a witness. And so on. * * * I wonder sometimes when a defense like this is put up this strong, who is going to take the side of Everett Connelly, the common man. Who is going to take his side? He hasn't the money to hire a couple of lawyers like that and get experts all over the country, Alienists, psychologists, and so on. Here is common Everett Connelly back here, just a farmer, so to speak, out here, and that is about the long and short of the money situation. If you are going to get into a comparison on that proposition, that is a fit subject to talk about too."

Of this the court said:

"This argument would have been improper unless it was invited. There is no record of the argument of Mr. Saley or Mr. Steward. No showing is made by way of affidavit that no

allusion to the situation of Mr. Nolte, or his ability to pay any judgment was made in their arguments. The court was not present through all of these arguments. There is some evidence in Mr. Coonley's argument that these statements were properly made by way of reply. Coupled with this is the fact that no objection was made at the time, which is of some weight at least in corroborating the suggestion that the door had been at least left ajar."

Again, appellant complains of the following remarks in closing argument: In speaking of the truck twenty-three times (some may have been in opening argument) as the "Franklin County truck," or the "county truck." In speaking of Mr. Steward:

"And I don't want any professional wizards from Des Moines to attempt to draw to you a picture that means anything different than what the court's instructions say. * * * I am young and inexperienced—Mr. Steward has had a lot more experience. * * * I realize Mr. Steward, he is a man of wisdom in things of this kind. He is a man who approaches a jury with an air of reluctant—doesn't want you to know certain things, but tells you so you will know it anyway. I know he knows he is a psychologist, and he knows the proper way to approach and work on the minds of a jury. He knows more about the automobile law of negligence in fifteen minutes than I will probably ever know practicing here as a small town lawyer in Hampton."

This self-detraction by one lawyer and his professed inability to cope with the legal prowess and hypnotic persuasion of his eminent opponent has been practiced off and on since the memory of man runneth not to the contrary. It has little, other than its antiquity, to recommend it. We feel quite sure that appellant was not prejudiced thereby. As said in Withey v. Fowler Co., 164 Iowa 377, 391, 145 N. W. 923, 928:

"Jurors must be given the credit of ordinary common sense and honest purpose to dispose of questions submitted to them upon the evidence under the instructions given by the court, and may be presumed to disregard the ordinary

interchange of left-handed compliments between opposing counsel except as matters of momentary diversion.'' See similar comment in Mitchell v. Mystic Coal Co., 189 Iowa 1018, 1022, 1023, 179 N. W. 428; State v. Gulliver, 163 Iowa 123, 127, 142 N. W. 948.

Furthermore, none of the matters complained of in this division of the argument is properly before us. No exceptions were taken to the remarks, nor were they called to the attention of the court at the times they were made so that the court could have admonished Mr. Coonley or instructed the jury if it saw fit. State v. Sale, 119 Iowa 1, 5, 92 N. W. 680, 95 N. W. 193; State v. Wilson, 157 Iowa 698, 721, 141 N. W. 337; Beans v. Denny, 141 Iowa 52, 64, 65, 117 N. W. 1091; State v. Roby, 194 Iowa 1032, 1046, 188 N. W. 709; State v. Burris, 198 Iowa 1156, 1178, 198 N. W. 82; State v. Thomas, 135 Iowa 717, 729, 109 N. W. 900; Sunberg v. Babcock, 66 Iowa 515, 520, 521, 24 N. W. 19; Frank v. Davenport, 105 Iowa 588, 590, 591, 75 N. W. 480; State v. Browman, 191 Iowa 608, 636, 637, 182 N. W. 823.

We have held that misconduct in argument cannot first be raised by affidavits made a part of a motion for new trial. Hornish v. Overton, 206 Iowa 780, 785, 221 N. W. 483; State v. Hixson, 208 Iowa 1233, 1238, 227 N. W. 166; State v. Huckelberry, 195 Iowa 13, 17, 188 N. W. 587. Necessarily, then, it cannot first be raised by mere allegation in the motion for new trial, as was done in this case.

We recognize that the misconduct in argument may be so flagrantly improper and so evidently prejudicial that it may be considered by us even though no exception was taken at the time the remarks were made. Hall v. Wolff, 61 Iowa 559–563, 16 N. W. 710; State v. Peirce, 178 Iowa 417, 443, 444, 159 N. W. 1050; Whitsett v. Chicago, R. I. & P. Ry. Co., 67 Iowa 150, 160, 25 N. W. 104; State v. McIntyre, 203 Iowa 451, 456, 212 N. W. 757; State v. Browman, supra, 191 Iowa 608, 639, 182 N. W. 823. But the misconduct complained of in this case is not of that character.

The first matter mentioned in this division of which complaint was made had reference to the remarks concern-

ing the financial circumstances of the parties. Appellee argues that whatever was said in the closing argument was simply responsive to what appellant said in his preceding argument. What appellant said in his argument is not shown and is in dispute. Appellant had both the opening and closing arguments of appellee taken down by the court reporter. But his own arguments were not so reported. It is of little avail to have the arguments of one party taken and not those of the other party. If that is done and both are certified to this court it is a simple matter to determine whether a closing argument is justifiable response. The proper procedure in making a record in such instance has frequently been commented on by the court. In State v. Wilson, supra, 157 Iowa 698, 721, 141 N. W. 337, 346, the court said:

"It is another case coming to us where the closing argument only was taken down by the reporter, and counter affidavits were filed by the state as to what counsel for the defense said in their arguments to the jury." See, also, State v. Browman, supra, 191 Iowa 608, 635, 182 N. W. 823; State v. Brewster, 208 Iowa 122, 125, 222 N. W. 6.

In holding that the proper way to show that a closing argument was not responsive was by a bill of exceptions, and not by affidavits, the court, in State v. Voelpel, 213 Iowa 702, 704, 239 N. W. 677, 678, said:

"No doubt the better way is to have the argument taken by the court reporter, certified and transcribed, and thus made a part of the record; but the foregoing statutes [sections 13933, 13937, Code of 1927] provide the way for making of record the argument when the better and preferable course has not been pursued."

For other decisions that the proper way to make a record of the misconduct of an attorney in argument to a jury, where all arguments are not reported and certified, must be by bill of exceptions, certificate, or finding of the court settling any dispute as to the facts on which the charge is based, see: Rayburn v. Central Iowa Ry. Co., 74 Iowa 637, 641, 642, 35 N. W. 606, 38 N. W. 520; Ricker v. Davis,

160 Iowa 37, 47–54, 139 N. W. 1110; State v. McClure, 159 Iowa 351, 354, 356, 140 N. W. 203; Spaulding v. Laybourn, 164 Iowa 277, 283, 145 N. W. 521; Frank v. Davenport, supra, 105 Iowa 588, 590, 75 N. W. 480; State v. Burton, 103 Iowa 28, 30, 31, 72 N. W. 413; Hall v. Carter, 74 Iowa 364, 368, 369, 37 N. W. 956; Hornish v. Overton, supra, 206 Iowa 780, 785, 221 N. W. 483; Miller & Kizer v. Des Moines City Ry. Co., 196 Iowa 1033, 195 N. W. 600; De Wulf v. Dix, 110 Iowa 553, 558, 81 N. W. 779; Kinney v. McFaul, 122 Iowa 452, 454, 455, 98 N. W. 276; State v. LaGrange, 99 Iowa 10, 12, 68 N. W. 557; Hein v. Waterloo, C. F. & N. R. Co., 180 Iowa 1225, 1229, 1230, 162 N. W. 772.

Since the appellant's arguments were not reported or properly made a part of the record, and there is no proper showing of what was said therein, we must presume that the part of the closing argument complained of was legitimate response. In State v. Browman, supra, 191 Iowa 608, 635, 182 N. W. 823, 834, the court said:

"The State has the right to answer argument advanced or invited by counsel for defendant; and, where the argument for defendant is not preserved, it will be presumed, nothing appearing to the contrary, that argument by the prosecutor was a legitimate response to argument for the defendant."

See, also, State v. Roby, supra, 194 Iowa 1032, 1047, 188 N. W. 709; State v. Burris, supra, 198 Iowa 1156, 1179, 198 N. W. 82; State v. Bird, 196 Iowa 474, 478, 479, 194 N. W. 73. In this case the presumption is aided by the fact that the remarks complained about indicate that they were made in response to argument of the defendant. State v. Brewster, supra, 208 Iowa 122, 125, 222 N. W. 6; State v. Hutchinson, 95 Iowa 566, 571, 64 N. W. 610.

Appellant also complains of misconduct in closing argument of remarks made about the failure of appellant to call Dirst as a witness, as further insinuation that appellant was protected by insurance. No exception was taken to the statement and what we have said of like complaints applies also to this one.

■ IV. Error is assigned because of overruling appellant's objection in the cross-examination of the deputy sheriff respecting an alleged admission of Nolte to him that the truck was traveling at a speed of forty miles an hour. The witness did not deny that the statement was made but said he could not remember. Whether the speed was forty miles an hour or thirty, as admitted by Nolte, it was fast driving because of his obscured view. Matters of cross-examination and the conduct of the trial are necessarily largely within the discretion of the trial court and we find no such abuse thereof as to indicate any prejudice to appellant. There was no reversible error. State v. McClure, supra, 159 Iowa 351, 355, 140 N. W. 203; State v. Johns, 152 Iowa 383, 390, 132 N. W. 832.

■ V. When appellee was on the witness stand his attorney drew a rough chalk outline of the highway intersection, on the courtroom floor in full view of the witness and the jurors and opposing counsel, and used it in his examination. Appellant objected that he was using it to lead the witness. The objection was overruled. The witness made marks on this crude plat indicating the place of collision, etc. Opposing counsel used it in their examination of this and other witnesses. All of them were marking and drawing lines upon it. The "heres" and "theres" pointed out by the attorneys and witnesses apparently appeared on the floor but it is difficult to find their location in the record. Error is assigned because appellee's attorney thus led his witnesses, and was also attempting to "change, alter and obliterate the plat," and in argument to the jury wrongfully accused appellant's counsel of having made a certain line supposed to designate a fence, which he insisted he did not make. These assignments deserve no further comment. An "exhibit" of this kind is not recommended but we find no error in its use. Appellant's counsel later made a replica on paper of at least part of the marks and it was received in evidence without objection.

VI. Error is assigned because of the court's refusal to withdraw from the jury the issue of the impairment of appellee's vision because of his injuries. We think the testi-

mony of appellee's attending physician warranted the submission.

VII. We have many times said that mere misconduct on the part of counsel is not enough alone to require the granting of a new trial unless it appears so prejudicial as to deprive the party complaining of a fair hearing of his case to the jury on the evidence. This court has never hesitated to censure unprofessional conduct on the part of lawyers. While we do not approve or condone such misconduct, the fact that it may be indulged in in a particular case does not mean that the judgment therein must be set aside. Regardless of the misconduct, prejudice to the complaining party must be made affirmatively to appear before a reversal is justified. Much necessarily must be left to the good sense and the broad legal discretion of the trial judge. He occupies a position of vantage and his conclusion is entitled to much weight. His discretion is, of course, a sound legal discretion; but unless it appears probable that a different result would have been reached but for such misconduct, this court is not warranted in interfering. We have consistently held to that view in our decisions. Hammond v. Sioux City & P. Ry. Co., 49 Iowa 450, 453; Sunberg v. Babcock, supra, 66 Iowa 515, 520, 521, 24 N. W. 19; State v. Thomas, supra, 135 Iowa 717, 729, 730, 109 N. W. 900; State v. Burris, supra, 198 Iowa 1156, 1178, 1179, 198 N. W. 82; State v. Bird, supra, 196 Iowa 474, 479, 194 N. W. 73; State v. Cooper, 169 Iowa 571, 587, 151 N. W. 835; Hein v. Waterloo, C. F. & N. R. Co., supra, 180 Iowa 1225, 1227, 162 N. W. 772; Hannestad v. Chicago, M. & St. P. Ry. Co., 132 Iowa 232, 233, 109 N. W. 718; In re Estate of Wharton, 132 Iowa 714, 723, 109 N. W. 492; State v. Wheelock, 218 Iowa 178, 182, 254 N. W. 313; Johnson v. Kinney, 232 Iowa 1016, 1027, 7 N. W. 2d 188, 144 A. L. R. 997.

Appellant concedes that the case was one for the jury. Appellee had the right of way. He was driving slowly. He did not run into the truck, but his car was struck broadside by the truck and pushed and thrown sideways a considerable distance. The appellant was driving at a greater speed

than the situation warranted. In overruling the motion for a new trial, the court, in summing up, said:

"Considering the case on the whole and the complaints in the aggregate, the court cannot find that a fair trial was not had by the defendant."

VIII. With respect to the insurance phase of the case, we regret to say that the conduct of both Mr. Coonley and Mr. Steward merits censure. Whether, as Justice Preston expressed it, in Hein v. Waterloo, C. F. & N. R. Co., supra, 180 Iowa 1225, 1232, 162 N. W. 772, 775, "it was a case of 'six of one and half a dozen of the other,' or, as it is sometimes put now, 'fifty-fifty,'" we need not say. Mr. Steward rather jumped the gun in his precipitation to inform the jurors, in answer to the whispered inquiry, "that there was no insurance company in this case, that this was a case against Ed Nolte." Literally, this was true. But it was not an answer to the inquiry, and it was intended to convey a message other than the literal import of his words. He confesses this intention in his printed argument, thus:

"Our audible response to the whispered inquiry was a truthful one. There was no insurance company *in* the case. [His italics.] Ed Nolte was the only defendant. *While we intended that the statement be misleading* [our italics], it was nevertheless truthful so far as it went and merely sought to conceal that which plaintiff's counsel improperly sought to reveal."

It was the expressed thought of the trial court that Mr. Coonley had done nothing at that time wrongfully intimating to the jury that the appellant was protected by insurance.

Possibly Mr. Coonley thought he was justified in fighting fire with fire when he asked his client whether he carried any insurance to protect him from his "loss here," but the inquiry was clearly immaterial and clearly improper. He was still doing some flame-throwing in the closing argument.

We are nevertheless satisfied that the appellant suffered no prejudice. Neither should we say that the appellee received more than was justly due him. Looking at the matter in a practical, common-sense way, we think the result would have

been no different had the improprieties been absent. A juror is just an everyday good citizen, taken from his or her daily work and given a most important public office. It is not a sought-for job, nor a remunerative one, and it is not a pleasant task. But it is a most important duty—just doing for others as he would wish done for himself—doing even-handed justice in so far as he conscientiously can in controversies affecting the lives, limbs, liberties, and pocketbooks of the litigants. He is just as keen mentally, just as sound and sensible, just as honest as a juror as he was and is as a citizen. He does not require a brick house to fall on him to give him an idea. These Franklin county jurors were average citizens. Most of them probably owned automobiles, on which, as a sound business proposition, they no doubt carried liability insurance. They knew that the policy gave them protection if they were sued as Nolte was, and that the company would send a lawyer to represent them and defend them in such suit. They knew that Nolte was a common laborer who had worked for Franklin county for sixteen years and drove a truck belonging to the county. They knew that the supervisors of the county, as sound administrators and businessmen, in all probability carried liability insurance on the truck Nolte was operating. Many of the jurors probably knew Bob Saley, an able lawyer who has practiced his profession successfully at Hampton for over thirty years, and they knew that Nolte would hardly have another able lawyer come up from Des Moines if he were doing the hiring and paying. Each juror knew that there was some purpose in their being interrogated about any connection, interest, or relation which they might have in or with any named or unnamed automobile liability insurance company. Any additional deductions which they might have made from the conduct of the attorneys were merely cumulative.

The judgment is—Affirmed.

OLIVER, HALE, WENNERSTRUM, GARFIELD, SMITH, MANTZ, and MULRONEY, JJ., concur.