Harry ATTLESON, Plaintiff and
Respondent,

·v.

L. H. BOOMGARDEN, Defendant and
Appellant.

No. 7545.

Supreme Court of North Dakota.

Oct. 26, 1955.

Rehearing Denied Dec. 19, 1955.

Hyland & Conmy, Bismarck, for defendant and appellant.

Lanier, Lanier & Knox, Fargo, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from a judgment rendered against the defendant for damages to

plaintiff's 1951 Plymouth four door automobile resulting from a collision with a truck owned and operated by the defendant. The case was tried to a jury which rendered a verdict in favor of the plaintiff. The automobile at the time of the accident was being operated by W. W. McDougall who was plaintiff's agent.

The collision occurred at approximately 7:15 p. m. on July 23, 1954, on a gravel surfaced farm-to-market road nine miles west of the town of Buchanan. The gravel surface of the road was twenty-eight feet wide. In this gravel were four distinctly worn wheel paths or tracks. The road at the place of the accident ran east and west. The collision occurred on the west slope of a hill near the crest. The defendant Boomgarden came over the crest of the hill driving in the two center wheel tracks at a speed of thirty to forty miles an hour. McDougall coming up the hill was driving thirty-five to forty miles an hour. The vehicles made glancing contact. The truck stayed on the road; the car went into the ditch but did not turn over. It was badly damaged. There was little damage to the truck.

At the close of the testimony the defendant moved for a directed verdict upon the ground, among others, that plaintiff's agent, McDougall, was guilty of negligence that contributed proximately to cause the accident and now urges in this court that McDougall was guilty of contributory negligence as a matter of law that bars plaintiff's recovery. This contention is based upon McDougall's admitted speed of thirty-five to forty miles an hour. As the vehicles approached the point of collision the views of the drivers were obstructed by the crest of the hill. McDougall testifies that he first saw the truck when it was from thirty to fifty feet away. The defendant argues that the speed at which McDougall was traveling was a violation of Section 39–0902, NDRC 1943 and that he was therefore guilty of contributory negligence as a matter of law.

Whether in a civil action for damages speed in excess of a positive stat-utory limit is negligence as a matter of law or whether it is evidence to be considered on the question of negligence is a point upon which authorities differ. 60 C.J.S., Motor Vehicles, § 201, p. 542; 5 Am.Jur., Automobiles, Section 262; Cyclopedia of Automobile Law and Practice, Blashfield, Permanent Edition, Volume 10A, Section 6599, and Volume 4, Part 2, Section 2686, and Volume 10, Part 2, Section 6704. However that question is not before us in this case. The statute on which the defendant relies does not establish a definite speed limit. It provides in part:

"Subject to the provisions of section 39–0901 and except in those instances where a lower speed is specified in this chapter, it presumably shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding:
* * *

"4. Twenty miles an hour in traversing or going around curves or traversing a grade upon a highway when the driver's view is obstructed within a distance of one hundred feet along such highway in the direction in which he is proceeding; * * *.

" * * * It shall be prima facie unlawful for any person to exceed any of such foregoing speed limitations except as otherwise provided in section 39–0903." Section 39–0902, NDRC 1943.

According to this statute a speed of over twenty miles per hour is prima facie unlawful under the conditions described in the statute and it would follow that such a speed is at the most prima facie evidence of negligence and not negligence as a matter of law. Whether negligence results from such speed is a matter for the jury to determine. The difference between such a statute as ours and statutes providing for definite speed limits is discussed and distinguished in Wosoba v. Kenyon, 215 Iowa 226, 243 N.W. 569. In cases not involving statutory speed limits we have held that violations by drivers of motor vehicles of statutory rules of the road are evidence

of negligence. Spenningsby v. Peterson, N.D., 67 N.W.2d 913; Knudsen v. Arendt, ⁻9 N.D. 316, 56 N.W.2d 340; Imus v. Huber, N.D., 71 N.W.2d 339. Defendant's contention that the record shows that the plaintiff is guilty of contributory negligence as a matter of law is not sustained.

■ The defendant further challenges the sufficiency of the evidence to support the verdict on the ground that there is no proper proof of the amount of damages suffered by plaintiff's car. The plaintiff offered in evidence a repair estimate made by a garage and testified that the repairs as shown by the estimate were needed because of the collision and that he had the repairs made. This exhibit was admitted in evidence without objection. It shows the amount of repairs, including total labor and parts, plus tax, to be $549.51. This is the exact amount of the verdict rendered by the jury. This exhibit and the accompanying testimony is sufficient to sustain the verdict rendered on this point. See Clark v. Josephson, N.D., 66 N.W.2d 539; Cyclopedia of Automobile Law and Practice, Blashfield, Permanent Edition, Volume 6, Part 1, Section 3415.

■■ The defendant vigorously asserts that the court committed reversible error in questioning the witness Fisher and permitting certain answers to be made over defendant's objection. Fisher saw the accident from a distance of one hundred fifty to two hundred yards. He was in a farmyard working on a piece of machinery when it occurred. He went down to the scene of the accident a minute or two after it happened. The evidence and rulings challenged by the specification of error being difficult to summarize, we quote verbatim from the transcript:

"The Court: I have a question I want to ask the witness. Can you tell where this collision happened on this road? A. How far from Buchanan?

"The Court: Do you know which side of the road, or in the middle or just where did it happen on the road? A. Well, I would say—

"Mr. Conmy: I want the record to show to that an objection calling for a conclusion and a self-serving declaration without foundation, calling for an opinion in the nature of expert testimony, improper and inadmissible, and prejudicial.

"The Court: Overruled. Did you see this collision? A. Yes, sir.

"The Court: You tell the jury where it happened.

"Mr. Conmy: Same objection.

"The Court: Overruled.

"A. This collision happened approximately nine miles west of Buchanan.

"The Court: Where on the road.

"Mr. Conmy: Same objection.

"The Court: Overruled.

"A. On this farm-to-market road that runs straight west from Buchanan.

"The Court: How wide is that road? A. Twenty-eight feet from gravel to gravel.

"The Court: That was the width at that time? A. Yes, sir.

"The Court: And on what part of the road did it happen, the collision happen?

"Mr. Conmy: The same objection.

"The Court: Overruled.

"A. You mean just from the center of the road?

"The Court: Yes, sir, I want to know where it happened, in the middle or—A. I would say it happened on the south side of the road, according to where McDougall's track had started to turn out, and up about twenty to twenty-five, thirty feet west of the approach, is where the impact took place.

"The Court: And now you are testifying as to what you saw?

452

"Mr. Conmy: One moment, if the Court please. I want to move that the last answer be stricken as an opinion without foundation, as a conclusion without proper foundation; as readily the subject of expert testimony, not properly the subject of expert testimony, and without the qualifications of the witness being established as an expert.

"Mr. Lanier: If the Court please, he has just testified as to what he saw.

"The Court: The first time that it required an expert to tell what he saw. You may answer. A. Well, sir, when we got out there, we could see the tracks where the car had started to skid, and it skidded across the approach into the ditch, approximately five to ten feet beyond the approach, setting with the rear end of the car into the ditch and the front end to the north.

"The Court: Are you testifying from the tracks or from what you saw. A. I am testifying from what I saw, and from the tracks.

"The Court: That's all."

The defendant argues that the court over objection elicited testimony from the witness Fisher that invaded the province of the jury and cites Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64, 73. In that case the former sheriff who arrived at the scene of the accident a short time after it happened prepared a sketch of the scene which was introduced in evidence as an exhibit. Concerning this exhibit we said:

"It is apparent from an examination of the exhibit as well as from the statement of plaintiff's counsel at the time of its introduction that the sketch in question exceeded the limits prescribed by the general rule of admissibility of such documents in that it contained not only what the sheriff saw when he arrived at the scene of the accident but contained also his conclusions with respect to highly controversial and important matters. He depicted thereon the relative positions of the motor vehicles as they approached each other and indicated by diagram and legend the point of impact. The determination of these matters was exclusively within the province of the jury and it was error for the court to permit the former sheriff's conclusions with respect thereto to be submitted to the jury in the highly impressive form of a diagram."

See also Hamre v. Conger, 357 Mo. 497, 209 S.W.2d 242. It is obvious from the part of the record that we have quoted that the court was trying to secure from the witness testimony as to what he saw. The witness saw the accident, or as he puts it: "I seen it just as it happened." Almost immediately he went to the scene. He described in detail the condition of the highway, where the tracks were, and where dirt had fallen from the undercarriage of one of the vehicles. As the record stood at the time the objections involved in this specification of error were made it appeared that the witness was testifying as he states: "from what I saw, and from the tracks." It was not error to overrule the objections. Counsel for the defendant points to the following question and answer which immediately follow that already quoted:

"Q. (By Mr. Conmy) From where you were standing up in the yard, could you tell whether the Boomgarden truck was across the center line of the road or whether the automobile driven by McDougall was across the center of the road? A. No, sir."

It is argued that this answer of the witness clearly demonstrates that he was testifying to his conclusion from what he saw after the accident. However no motion was made to strike the former testimony of the witness so the last question and answer avails the defendant nothing. The correctness of the court's ruling on the objections must stand or fall on the record as it stood at the time the court's ruling was made when no opportunity was given the court to change it.

The final specification of error argued in the defendant's brief pertains to a blackboard on which plaintiff's counsel drew a diagram or chart which he used in cross-examining the defendant whom he had called for cross-examination under the statute, Section 31–0202 NDRC 1943 and later used in examination of one of his own witnesses. The blackboard was not made an exhibit in the case and is not a part of this record. Defendant's counsel did not object to the use of the blackboard in the first instance but when plaintiff's counsel started to use it in connection with the examination of plaintiff's principal witness, McDougall, defendant's counsel objected. After considerable colloquy between the court and both counsel, the witness was permitted to identify certain marks on the blackboard as indicating the crest of the hill and ruts or tracks where the cars had traveled and to give descriptive testimony with respect thereto. These marks had been pointed out to and discussed with the defendant under cross-examination and there appears to be some disagreement in the testimony of these two witnesses as to the correctness of the diagram.

The fact that counsel is permitted to use in connection with the examination of a witness a drawing or diagram which he has made upon a substance which does not lend itself to being made a part of the record and is not an exhibit in the case is not always reversible error. It is a dangerous practice that does not meet with our approval for it may require a reversal where the use of the drawing and its absence from the record tends to obscure a critical point of controversy involved in a motion for a new trial or an appeal. But the use of such illustrative material which does not become a part of the record does not alone compel reversal. People v. Figueroa, 134 Cal. 159, 66 P. 202; Anderson v. Commonwealth, 205 Ky. 369, 265 S.W. 824; Carter v. Commonwealth, 260 Ky. 538, 86 S.W.2d 290; Connelly v. Nolte, 237 Iowa 114, 21 N.W.2d 311. In this case witnesses described in detail, although with some conflict, the locale of the accident. Questions propounded by counsel in connection with his examination insofar as they refer to the blackboard appear to be neither misleading nor confusing, either to the jury or to this court. It was used without objection in connection with the cross-examination of the defendant. It was only when a witness for the plaintiff started to testify in contradiction of some of the statements of the defendant with reference to the blackboard drawing that an objection was interposed. These points of conflict have no bearing upon the grounds on which the defendant now seeks reversal of the judgment. Under these circumstances it is apparent to us that the use of the blackboard did not result in prejudicial error to defendant. The judgment appealed from is affirmed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.

On petition for rehearing.

Rehearing denied.

BURKE, Chief Justice (dissenting).

Upon a reconsideration of the issues in this case on petition for rehearing I have reached the conclusion that the opinion filed by the court herein is not correct. The principal issue of fact in this case was whether the collision between the defendant and the plaintiff occurred upon the north or the south half of an east and west highway. The question as to which party was negligent was to a great extent dependent upon how that issue of fact was decided. The witness Fisher, who saw the collision from a point 150 to 200 yards from the highway was the only disinterested person who saw the collision.

During the trial the trial judge took over the examination of the witness Fisher and after some preliminary questions and answers the following appears of record:

"The Court: And upon what part of the road did it happen, the collision happen? A. You mean just from the center of the road?

"Q. Yes, sir, I want to know where it happened, in the middle or—A. I would

say it happened upon the south side of the road, according to where McDougald's track had started to turn out, and up about twenty to twenty-five, thirty feet west of the approach is where the impact took place.

"The Court: And now you are testifying as to what you saw?

"Mr. Conmy: One moment, I want to move that the last answer be stricken as an opinion without foundation, as a conclusion without proper foundation; as readily the subject of expert testimony, not properly the subject of expert testimony, and without the qualifications of the witness being established as an expert.

"Mr. Lanier: If the court please, he has just testified as to what he saw.

"The Court: The first time it required an expert to tell what he saw. You may answer."

The trial judge's ruling, "You may answer," was not directly responsive to the motion to strike. It was, however, given as a ruling on the motion and can only be construed as a meaning, "Let the answer stand", as there was no unanswered question pending at the time.

I think that it is apparent upon the record that the challenged answer, in so far as it was responsive at all, was a conclusion which the witness had deduced from tracks he had seen upon the highway. He said, "I would say it happened upon the southside of the highway, according to where McDougald's tracks had started to turn out." The language, "I would say" and "according to", clearly marks the answer as a conclusion. The leading question, "And you are now testifying as to what you saw?" which was thereafter propounded by the trial judge could not have been answered in the affirmative unless the witness misunderstood the meaning of the question. In any event it was not answered by the witness. The trial judge apparently decided to accept the statement made by the attorney for party to whom the challenged answer was favorable, as a basis for overruling the motion to strike. He also coupled with his ruling a statement which would indicate to everyone in the court room, including the jury, that the attorney for the defendant should have known better than to make the objection in the first place.

I think it was error to deny the motion to strike. Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64. I think also that the error was prejudicial because the issue upon which the testimony was given was one of the most important in the case and the witness who gave it was a disinterested witness. It is my opinion that a new trial should be granted.